Johnny MACK  *v.*  Luther SUTTER
and Harrill & Sutter

05-748                                                    233 S.W.3d 140

Supreme Court of Arkansas
Opinion delivered March 23, 2006

[Rehearing denied April 27, 2006.]

*Hunt & Harris*, by: *Eugene Hunt*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Robert L. Henry, III* and *Scott M. Strauss*, for appellees.

J IM HANNAH, Chief Justice. Johnny Mack appeals summary judgment entered in Pulaski County Circuit Court on March 14, 2005. Mack asserts that the circuit court erred in granting summary judgment in favor of Luther Sutter and Harrill & Sutter, P.L.L.C. (Sutter), on his action for attorney malpractice because he offered proof that but for the conduct and errors of his attorneys, Sutter, he would have prevailed in his underlying discrimination case. Mack also argues that he met proof with proof, showing that his cause of action for fraud was not adequately addressed in Sutter's motion for summary judgment and because he met proof with proof on the issue of the alleged conversion of settlement funds that he should have received. We disagree and affirm. This appeal was certified to us by the court of appeals, and our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and (b)(4).

*Facts*

Mack was a twenty-three-year employee of the Southern Bag Company when he was terminated on October 2, 2000. He was dismissed because he had reached offense number four under the points-based disciplinary system used at Southern Bag pursuant to a union labor agreement. Under the disciplinary system, a written warning is issued for the first offense, a one-day layoff is imposed for the second offense, a five-day layoff is imposed for the third offense, and dismissal is imposed for the fourth offense.

The first disciplinary action noted in this case was on March 7, 2000, when Mack was given a written warning for a first offense. The Disciplinary Action form lists "habitual absenteeism" as the reason for the disciplinary action. Also noted on the form were

absences and tardy appearances for work dating to June 28, 1999. On July 17, 2000, Mack was subjected to a one-day layoff for a second offense of the points system. The Disciplinary Action form indicates that Mack was careless or neglectful in running 11,500 bags with an improperly placed tube. The form also notes that correcting the problem Mack created took four employees five hours. On August 15, 2000, Mack was subjected to a five-day layoff for failing to maintain quality standards through carelessness or neglect by running 21,930 bags with an improperly placed tube. Finally, Mack was terminated for his fourth offense on October 2, 2000. His fourth offense was for tardiness.

Mack does not dispute the validity of the disciplinary actions taken; however, he asserts that he was treated differently than whites who had similar disciplinary records. Mack is black. He argues that James Agee, who is white, had a disciplinary history very similar to his own and yet, on his fourth offense, he was not terminated. However, in Agee's case, the labor union pointed out to Southern Bag Company that it had failed to act on Agee's fourth offense within five days as required under the labor agreement, and as a result Agee was not terminated. The evidence indicated that had Southern Bag acted timely, Agee would have been terminated. Mack also asserts that Ricky Vanderpool, who is white, had a similar history to his own but was not terminated. However, no evidence was offered by Mack to show that he and Vanderpool were in a similar position, other than Mack's assertion. Mack also asserted that David Clark and Jeff Bolin ran bad bags but were not reprimanded as he was, and that they had missed a lot of work. Clark and Bolin are white. However, again, Mack offered nothing but his assertion that they were similarly situated but treated differently.

Mack admitted that he never raised the issue of his alleged discrimination with his employer, and that while he discussed it with union officials, he never filed a grievance. When asked why he filed a complaint with the Equal Employment Opportunity Commission, Mack stated, "You know, I felt like I had been discriminated against."

Some months after his termination, Mack became acquainted with Sutter. He met with Sutter along with other potential plaintiffs about once a month at fellow employee Ronnie Reynolds's home in Pine Bluff. Ronnie Reynolds was also pursuing a discrimination claim against Southern Bag. On March 16, 2001, Sutter filed a "Class Action Complaint" in the United States

District Court, Eastern District of Arkansas, listing Mack as one of twenty-three plaintiffs. Sutter never moved to have the class certified.

Mack stated that he felt like he had the best claim of discrimination and that, other than Mary Cherry, the others in the suit did not have a claim. Mack also stated Elnora Williams was passed over for someone who was white, even though she had been there a long time. Additionally, Mack felt like Tommy Johnson was in a similar position. He complained of this to Sutter, who, according to Mack, told him that all the plaintiffs needed to stick together to get a bigger pot. Mack felt that his claim was being used to give credibility to other less credible claims, and that he would do better in a separate lawsuit.

Richard Pryor received $1500 from the settlement in this case, but he was never added as a plaintiff. He was a former employee of Southern Bag who approached Sutter near the end of the case and asked that his claim be included in settlement negotiations, which Sutter did. Mack claims that he is entitled to Pryor's share of the settlement, but fails to explain why Pryor's funds belong to him. Mack agreed to settle his claim for $30,000, received $30,000, and signed a settlement agreement indicating that he was settling his claim for $30,000.

According to Mack, after the settlement, rumors passed that Sutter received $2.4 million as a fee. Sutter heard of the rumors and met with Mack and Reynolds. Although Mack said that he had no knowledge of the rumors, he took a recorder to Sutter's office and recorded the discussion; Sutter was aware that the discussion was being taped. Sutter showed them the check for his fee and got Southern Bag's counsel to confirm the fee to Mack and Reynolds over the phone. However, this did not resolve Mack's concerns that his case had not been handled properly.

Mack alleged that Sutter lied to him about the settlement that Southern Bag had offered to the plaintiffs, and that Sutter kept changing the amount that Southern Bag was offering. Sutter stated that the settlement amount was not set until negotiations ended. Mack asserted that Sutter lied to him, telling him that he would get his job back, but Mack admitted that when he signed the settlement agreement, he knew he was not getting his job back. Mack further asserted that Sutter told him that Southern Bag offered to settle with Mack for $85,000, but then later Sutter told him that the only offer would be $30,000, "Take it or leave it." Mack

accepted $30,000 in settlement of his claim and signed a release. Mack stated that Sutter told the plaintiffs that as long as they stuck together he would represent them, but if they did not all agree to the settlement terms, he would have to withdraw. Mack also stated that none of the other plaintiffs tried to compel him to settle.

### Standard of Review

Summary judgment is granted when there are no genuine issues of material fact to be litigated. *Meadow Lake Farms, Inc. v. Cooper*, 360 Ark. 164, 200 S.W.3d 399 (2004). If there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law. *Id.*

The party moving for summary judgment bears the burden of showing that there is no issue of material fact. *Wheeler v. Phillips Dev. Corp.*, 329 Ark. 354, 947 S.W.2d 380 (1997). Once this prima facie case of entitlement to summary judgment is made by the moving party, the burden of proof shifts to the nonmoving party. *Meadow Lake Farms, supra.* The nonmoving party must then move beyond formal allegations of pleadings and meet proof with proof by showing that a genuine issue of material fact remains to be litigated. *Templeton v. United Parcel Service, Inc.*, 364 Ark. 90, 216 S.W.3d 563 (2005); *Hughes Western World, Inc. v. Westmoor Mfg. Co.*, 269 Ark. 300, 601 S.W.2d 826 (1980). On appellate review, this court determines whether a material fact is left unanswered. *Meadow Lake Farms, supra.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

### Attorney Malpractice

To prevail in this case of attorney malpractice, Mack must show that, but for the alleged negligence of his attorney, the result in the underlying action would have been different. *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003). He must prove the discrimination case within the attorney–malpractice case. *Id.*

To establish a prima facie case of race-based discrimination, Mack must show: (1) that he is in a protected class; (2) that he met applicable job qualifications; (3) that his employment was terminated; and (4) that race was a factor in the termination. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir. 1995). Mack's case is based on race, which is a protected class. *See Sall v. Gonzales*, 437

F.3d 229 (2d Cir. 2006). He was terminated from his employment. Therefore, Mack satisfies two of the requirements.

As to the requirement that he meet applicable job qualifications, our analysis is not limited to the question of whether Mack was capable of doing the job, because by being in the position and performing to some extent, he would satisfy that requirement. To show that he met the applicable job qualifications, Mack must show that he was actually performing his job at a level that met Southern Bag's legitimate expectations. *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053 (8th Cir. 2000); *Miller v. Citizens Sec. Group*, 116 F.3d 343 (8th Cir. 1997). Mack admits that his deficient performance resulted in the production of nonconforming products. He also admits that he had unexcused absences from work, and that on a number of occasions, he failed to begin work on time. Mack's Disciplinary Action forms show that he was responsible for the production of over 30,000 defective bags and was reprimanded for carelessness and neglect. The facts also showed that Southern Bag had to correct the bags and, as a result, suffered down time. Southern Bag considered the matter of the bags to be significant enough to take formal disciplinary action. Also, Mack's record indicates that he was not on time or had missed work altogether on at least fifteen occasions. Mack fails to show that he was performing his job at a level that met Southern Bag's legitimate expectations; therefore, he fails to meet the second element in making a prima facie case of discrimination.

As to the last requirement, that race was a factor in the termination, Mack fails to provide facts in support of his assertion that his termination was based on his race. He asserts that James Agee, Ricky Vanderpool, David Clark, and James Bolin were similarly situated to him with respect to work performance, but that he was terminated and they were not. We have already discussed that Agee was not terminated for his fourth offense under the disciplinary process because Southern Bag failed to act on Agee's infraction within five days. In his response to the motion for summary judgment, Mack offered evidence regarding Agee, but beyond that, he offers only conclusions and assertions regarding others similarly situated. More than mere assertions or possibilities must be offered to defeat a motion for summary judgment in a discrimination case. *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992). Mack failed to meet proof with proof. He has failed to show that there remains a material question of fact on his claim of discrimination. Therefore, his malpractice claim need not be

addressed further because we cannot say that but for the alleged misconduct of his attorneys the outcome would have been different on his discrimination claim.

*Conversion*

Mack asserts that his attorneys converted $1500 of the settlement amount belonging to him and gave it to Richard Pryor. Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *Hatchell v. Wren*, 363 Ark. 107, 211 S.W.3d 516 (2005). The facts are clear. Mack agreed to a settlement of $30,000. He signed a release stating that for that amount he was settling his claims against Southern Bag. He received the $30,000 that he was expecting. In the settlement of the claims of the twenty-three named plaintiffs and Pryor, Pryor was offered and accepted $1500 in settlement of his claim against Southern Bag. Mack offers no evidence to show that the $1500 Pryor received belonged to him.

*Attorneys' Fees*

Mack argues that his attorneys should disgorge their fee to compensate him for his losses due to malpractice and conversion. Given that we hold that Mack failed to meet proof with proof on his claims of discrimination and conversion, it cannot be said that Mack obtained less in this case than he would have but for his attorneys' conduct. There is no merit to this claim.

Affirmed.

BROWN, J., not participating.