2009 Ark. 506

**Billie Jo GREENLEE, Appellant,**

v.

**J.B. HUNT TRANSPORT SERVICES Inc. & J.B. Hunt Transport, Inc., Appellees.**

**No. 07–1254.**

Supreme Court of Arkansas.

Oct. 22, 2009.

---

Michael Hodson, Fayetteville, for appellant.

Elizabeth Storey Bryan, P.A., by: Elizabeth Storey Bryan, Fayetteville, for appellees.

PAUL E. DANIELSON, Justice.

Appellant Billie Jo Greenlee appeals the order of the Benton County Circuit Court granting a motion for summary judgment in favor of appellees J.B. Hunt Transport Services, Inc. and J.B. Hunt Transport, Inc. (hereinafter collectively referred to as J.B. Hunt). Greenlee's sole point on appeal is that the circuit court erred in granting J.B. Hunt's motion. We find no error and affirm.

The record reveals the following facts. Greenlee was hired as a maintenance assistant in the warranty department for J.B. Hunt at its home office on September 16, 2002. In January of 2003, Greenlee applied for thirty days of personal leave because of complications due to her pregnancy. J.B. Hunt granted the leave on an intermittent basis, which permitted Greenlee to take up to thirty days off in total, as needed, to deal with the pregnancy complications. On March 7, 2003, she applied for additional leave under the Preliminary Family Medical Leave Act (pre-FMLA), requesting time off from work until May 5, 2007, as her doctor had prescribed her with bed rest until that date. It was determined by the group-benefits department that Greenlee did not qualify for J.B. Hunt's pre-FMLA leave. She was then terminated because she was unable to report for work and was not eligible for pre-FMLA leave.

On June 24, 2003, Greenlee filed a complaint against J.B. Hunt, alleging that her termination was gender discrimination under the Arkansas Civil Rights Act of 1993, currently codified at Ark.Code Ann. §§ 16–123–101 to –108 (Repl.2006). J.B. Hunt filed a motion for summary judgment on March 28, 2006, asserting that the undisputed facts presented to the court established that J.B. Hunt did not terminate Greenlee because of her pregnancy, but because she had repeated problems with attendance and was not qualified for additional leave when she notified J.B. Hunt that she would not be able to report to work from March 7, 2003, until May 5, 2003. The circuit court granted the motion on July 23, 2007. It is from that order that Greenlee now appeals.

Greenlee claims that the circuit court erred in granting summary judgment because the Arkansas Civil Rights Act protected her from being discharged when she was experiencing complications due to pregnancy, she proved her pregnancy was a motivating factor in her termination, she proved that a bias existed because she was pregnant, and J.B. Hunt's failure to allow for sick leave when she was experiencing complications from pregnancy was discriminatory. J.B. Hunt avers that the circuit court did not err by granting its summary-judgment motion because Greenlee failed to offer proof of discrimination.

█ Summary judgment may only be granted when there are no genuine issues of material fact to be litigated. *See K.C. Props. of Nw. Arkansas, Inc. v. Lowell Inv. Partners,* 373 Ark. 14, 280 S.W.3d 1 (2008). The moving party is then entitled to judgment as a matter of law. *See id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *See id.* In the context of employment discrimination cases, this court has noted that an affidavit must contain "[m]ore than mere assertions or possibilities ... to defeat a motion for summary judgment." *Mack v. Sutter,* 366 Ark. 1, 6, 233 S.W.3d 140, 145 (2006).

█ The Arkansas Civil Rights Act provides citizens of this state legal redress for civil-rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses. *See Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000). The Act also seeks to prevent retaliatory conduct against those seeking its protection. *See id.* The Act unequivocally grants to qualified persons the right to be free from employment discrimination "because of gender." Ark. Code Ann. § 16–123–107(a)(1). The definition section of the Act also makes clear that "because of gender" includes "on account of pregnancy, childbirth, or related medical conditions." Ark.Code Ann. § 16–123–102(1). Therefore, should Greenlee prove that she was terminated on account of "pregnancy, childbirth, or related medical conditions," she would be entitled to relief under the Act.

To date, this court has addressed only one pregnancy-gender discrimination case. *See Flentje, supra.* In *Flentje,* we looked to federal law for guidance and noted that, under federal law, a court can review a gender-discrimination case under two alternative theories—a "mixed-motive" analysis as used in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or a shifting-burdens test as applied in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Flentje,* 340 Ark. at 571, 11 S.W.3d at 537 (citing *Stacks v. Sw. Bell Yellow Pages, Inc.,* 996 F.2d 200 (8th Cir.1993)).

█ Under the standard set forth in *Price Waterhouse,* a plaintiff must first produce direct evidence that an illegitimate criterion, such as gender, played a motivating part in the employment decision. *See Cronquist v. City of Minneapolis,* 237 F.3d 920 (8th Cir.2001). Once the plaintiff establishes such direct evi-

dence, the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. *See id.* If the employer fails to meet this standard, the employee prevails. *See id.*

■ Under the three-stage, burden-shifting standard set forth in *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *See Cronquist, supra.* Once a prima facie case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. *See id.* If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. *See id.*

■ In *Flentje,* this court applied the *McDonnell Douglas* test after concluding that the "mixed-motive" analysis of *Price Waterhouse* was inapposite because the appellant had proffered no direct evidence of discriminatory intent. In the instant case, we also apply the *McDonnell Douglas* test. In her brief, Greenlee argues that there was no doubt that J.B. Hunt considered an illegitimate criterion because there was testimony that the sole reason for her termination was the time from work she would be required to miss because of pregnancy complications. However, Greenlee proffered no direct evidence of discriminatory intent on the part of J.B. Hunt. The evidence presented reveals that Greenlee did not qualify for any leave in addition to the time off she had already been given by J.B. Hunt. The rec-

ord further reveals that the reason for her termination was her ineligibility for additional leave, not because the time she would need off was a result of pregnancy complications. Stated another way, Greenlee was not denied approval for additional leave because she was pregnant; rather, she was denied additional leave because she had not worked at the company for the required six months in order to qualify for leave under pre-FMLA or FMLA.

The Eighth Circuit has clarified the *Price Waterhouse* standard by holding that direct evidence is "evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993) (quoting *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992)). The allegations made by Greenlee of discriminatory discipline and termination depend on a very small amount of circumstantial evidence[1] and do not directly reflect a discriminatory attitude of any of J.B. Hunt's decisionmakers.

■ Because the *Price Waterhouse* analysis does not apply, we use the *McDonnell Douglas* test. Under *McDonnell Douglas,* Greenlee must first establish the four elements of a prima facie case of gender discrimination: (1) that she is within the protected class; (2) that she met applicable job qualifications; (3) that her employment was terminated; and (4) that there is some "additional showing" that pregnancy was a factor in her termi-

---

1. The evidence presented by Greenlee is discussed more thoroughly under our analysis of the *McDonnell Douglas* test.

nation. *Flentje,* 340 Ark. at 571, 11 S.W.3d at 538 (citing *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64 (8th Cir.1997)). We question whether Greenlee even established a prima facie case of gender discrimination against J.B. Hunt under the circumstances here. It is undisputed that she would not be able to report for work for two months. Greenlee had been employed with J.B. Hunt less than six months and did not qualify for any additional leave. Therefore, it is debatable whether Greenlee actually met the applicable job qualifications because she was given a doctor's order not to work. Furthermore, the only "additional showing" that her pregnancy was a factor in Greenlee's termination was her own testimony that she was treated differently after she became pregnant. However, the appellant in *Flentje* also failed to produce evidence beyond her own testimony of maltreatment, and this court held that she had shown a prima facie case to pass the first prong under *McDonnell Douglas. See Flentje, supra.*

█ Assuming Greenlee met her burden and established a prima face case of gender discrimination, the burden then shifted to J.B. Hunt under the second prong of the *McDonnell Douglas* test. J.B. Hunt met its burden by articulating a legitimate, nondiscriminatory reason for Greenlee's discharge. J.B. Hunt produced evidence that she had previously had problems with absenteeism and tardiness. More importantly, the explanation given multiple times by J.B. Hunt and its officers was that Greenlee was terminated because she would not be able to report to work for two months, and the benefits department determined that she had not been with the company long enough to qualify for additional leave.

Attached to its motion for summary judgment, J.B. Hunt presented an excerpt from Greenlee's deposition, a record of a verbal warning given to Greenlee concerning her tardiness, an affidavit of Clifford Sandsmark, J.B. Hunt's Human Resources Manager, pages from the Preliminary Designation of FMLA or Other Qualified Leave for J.B. Hunt Employees, a notice of employee reprimand given to Greenlee, management instructions, and a note from Greenlee's doctor. In Greenlee's deposition, she admitted that she had at least fifteen instances of clocking in late in September and October 2002. On October 18, 2002, Greenlee was given a verbal warning about her tardiness, which she signed.

Sandsmark's affidavit explained that in January 2003, when Greenlee was having problems with her pregnancy, J.B. Hunt granted her up to thirty days of personal leave, which J.B. Hunt provided to employees who had worked for the company for at least sixty days but were not entitled to FMLA or pre-FMLA medical leave. Greenlee had been employed with J.B. Hunt approximately four and one-half months at that time. The following month, Greenlee was given a written reprimand for attendance problems unrelated to her pregnancy. The reprimand stated:

From September 27, 2002 to date, Billie Jo has accumulated 42.25 attendance points.

Billie Jo has missed excessive time for reasons other than her medical condition, reasons which do not qualify for an exemption to the attendance policy. As an example, Billie Jo left work early yesterday (2/27/03) for personal reasons (car shopping) and will be assessed points.

. . . .

Billie Joe understands that the leave provided only covers her current medical condition, and that she is still subject to the progressive attendance discipline policy. If she misses any further time

because of the medical condition that was approved for leave, she will provide a Doctor's note to verify the need for her absence. Because of the amount of time missed, Billie Jo understands that this will serve as a final warning and that any other missed time (tardiness, leave work early, missed days, etc.) due to reasons other than her condition will lead to termination of employment.

On March 7, 2003, Greenlee was instructed by her physician that she was not to return to work due to complications with her pregnancy, and her doctor sent instructions that she be put on bed rest. While Greenlee applied for leave under pre-FMLA, she did not qualify because she had not worked for a continuous period of six months at J.B. Hunt. According to Sandsmark's affidavit, he had assisted her in filling out the required paperwork but had reminded her that he did not have the authority to make the final decision on approving leave. On March 12, 2003, Sandsmark called Greenlee and informed her that the group-benefits department had denied her request for leave under pre-FMLA and that she was terminated because she could not return to work, had past absenteeism, and failed to qualify for additional leave.

Greenlee then failed to meet her burden under the third prong of *McDonnell Douglas* because she did not proffer evidence to prove that the explanation provided by J.B. Hunt was pretextual. In her response to J.B. Hunt's motion for summary judgment, she attached excerpts from her own deposition, the deposition of Sandsmark, the deposition of Rose Becraft, the deposition of Jerry Birge, Greenlee's department manager at J.B. Hunt, and the deposition of Brad Ledgerwood, Greenlee's immediate supervisor at J.B. Hunt. In her deposition, Greenlee alleged that after she became pregnant, she was

treated differently by Jerry Birge. She claimed that he began to write her up for things like not tucking in her shirt, eating at her desk, and taking a fifteen-minute break after an upsetting phone call from her physician. She further contended that he would give her assignments he knew that she could not complete because of her pregnancy, such as lifting heavy boxes. However, those allegations were not made in Greenlee's original complaint. Additionally, in the deposition excerpt of Jerry Birge that was included in Greenlee's exhibits, Birge was never asked about any of those allegations. Rather, he testified that Greenlee "was actually a good employee while she was at work ... [j]ust getting her to work and keeping her in a chair was the problem." Finally, the evidence provided that Jerry Birge was not involved in the final decision to terminate Greenlee.

In Sandsmark's deposition, he testified that the reason for Greenlee's termination was that she was not eligible for additional leave. Rose Becraft, who made the final determination that Greenlee did not qualify for pre-FMLA, affirmed that reasoning. When asked about Greenlee's past tardiness and absenteeism, she stated she could not say they were not a contributing factor, but the reason that she told Sandsmark that Greenlee could be terminated was because she was not eligible for further leave. Becraft testified that during that conversation, Sandsmark agreed that Greenlee should be terminated. Becraft also testified that she and Sandsmark both knew of Greenlee's past tardiness and absenteeism, but could not recall if that was discussed at all in that conversation.

Based on the evidence presented by Greenlee, she most certainly did not proffer anything that proved that the explanation provided by J.B. Hunt was pretextual. Therefore, Greenlee's claim fails under the *McDonnell Douglas* test.

Greenlee's final argument on appeal is that J.B. Hunt's sick-leave policy was discriminatory because it did not provide coverage for absences related to pregnancy. However, this argument is without merit. J.B. Hunt's leave policies did not exclude pregnancy or pregnancy-related conditions. J.B. Hunt's policy for leave under both FMLA and pre-FMLA included pregnancy as a qualifying condition. The undisputed fact is that Greenlee was not eligible for leave under FMLA or pre-FMLA because she had only been with the company for a short time. The federal courts have made it clear that even the federal Pregnancy Discrimination Act only requires that pregnant women be treated the ⌊12 same as similarly-situated employees, not that they be given preferential treatment. *See Lang v. Star Herald*, 107 F.3d 1308 (8th Cir.1997).

For all these reasons, we hold that Greenlee failed to show that there was a genuine issue as to a material fact or that reasonable differing inferences could have been drawn from the undisputed facts. Therefore, the circuit court did not err in granting summary judgment for J.B. Hunt, and we affirm.

Affirmed.

IMBER, J., not participating.