

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–686

| | |
|---|---|
| ADAM ALEXANDER<br>APPELLANT<br><br>V.<br><br>EASTERN TANK SERVICES, INC.<br>APPELLEE | **Opinion Delivered** March 30, 2016<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. CV–2014–435]<br><br>HONORABLE JAMES O. COX, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## CLIFF HOOFMAN, Judge

Appellant Adam Alexander appeals from the Sebastian County Circuit Court's July 14, 2015 order granting appellee's motion for summary judgment and denying appellant's motion for extension of time to respond, and from the circuit court's August 11, 2015 order denying appellant's motion for new trial or reconsideration. On appeal, appellant contends that (1) the circuit court erred in concluding that he failed to produce sufficient evidence to show that genuine issues of fact remain to be tried with respect to whether the discharge of his employment was motivated by discrimination in violation of the Americans with Disabilities Act (ADA) and the Arkansas Civil Rights Act (ACRA), and (2) the circuit court erred in denying his request for additional time to complete discovery before ruling on appellee's motion for summary judgment. We affirm in part and reverse and remand in part.

Appellant filed his complaint against appellee Eastern Tank Services, Inc. (Eastern) on

May 2, 2014.  He alleged that Eastern unlawfully terminated his employment in violation of the ADA, the ACRA, and 42 U.S.C. § 2000ff (GINA).  Alexander began his employment with Eastern as a dispatcher in September 2011.  He alleged that he began seeing Eric Johnson, LPC, LMFT, at Vista Health in Barling, Arkansas, around August 9, 2012, for biweekly outpatient-therapy sessions.  He provided a copy of a note explaining the need for his therapy to his safety manager, Paul McGehee, and Barry Zielinski with Eastern. Alexander also alleged that he had revealed to his employer that his therapist mentioned the possibility that he had Asperger's Syndrome, that he was scheduled to be tested in the future,[1] and that he felt that he could still handle his work without any problems.  Alexander stated that he subsequently overheard McGehee speaking on his cell phone stating that "we are not going to have someone with that condition working in this office."  However, he did not overhear who McGehee was speaking about.  Alexander's employment was subsequently terminated on August 20, 2012, and Eastern told him that he was being "laid off."  Alexander further alleged in his complaint that he was wrongfully terminated because of his disability, because he was regarded as having a disability, or because of his genetic information in violation of the ADA, the ACRA, and GINA.

Appellee filed an answer on May 30, 2014, and a motion for summary judgment on March 11, 2015.  In its motion for summary judgment, Eastern alleged that Alexander had failed to establish a prima facie case for discrimination under the ADA or the ACRA and had

---

[1] In Alexander's deposition, he explained that he was officially diagnosed with Asperger's Syndrome on May 21, 2014, after he had undergone testing.

failed to establish any unlawful employment practice in connection with GINA. Eastern additionally alleged that Alexander was laid off because its largest customer was reducing the number of loads, and fewer dispatchers were needed. Eastern further alleged that Alexander's alleged disability and genetic information had no impact on its decision; instead, Alexander had the least seniority except for one other dispatcher who actually occupied the position of slip seat, meaning that the employee could either dispatch or drive because he held a commercial driver's license. Eastern attached several exhibits to its motion, including depositions and affidavits. In McGehee's affidavit, he revealed that the decision to lay off Alexander was made in early August before Alexander had ever mentioned Asperger's Syndrome. The termination date of the first employee that Eastern laid off was on August 8, 2012. However, McGehee explained in his affidavit that Alexander's termination was delayed until August 20, 2012, because of other dispatchers being out sick or on vacation.

On March 17, 2015, appellant filed a motion for an extension of time to file a response,[2] which the circuit court subsequently granted and extended his time to file a response until May 1, 2015. Appellant filed a second request for an extension of time on April 27, 2015, which the circuit court granted and extended his time to file a response until May 29, 2015. On May 29, 2015, appellant filed a partial response in opposition to the motion for summary judgment and alternatively requested the court to again grant him an

---

[2] Alexander alleged that his response to the motion for summary judgment was originally due on April 2, 2015.

extension of time to respond.[3]  In his partial response, he alleged that there were genuine issues of fact that still existed and that appellee's motion for summary judgment should be denied in its entirety.  Alternatively, he requested additional time to conduct further discovery to show that any decline-in-business explanation offered by Eastern was merely pretext and to incorporate any further findings in a subsequent response, "if such be necessary."  After Eastern filed a reply, the circuit court filed an order on July 14, 2015, stating, "The Court being well-informed declares that the [summary-judgment] motion should be and is hereby GRANTED.  Plaintiff's request for a second extension of time is therefore DENIED."  Although appellant filed a motion for new trial or for reconsideration, the circuit court denied this motion on August 11, 2015, without any additional findings incorporated into the order.  This timely appeal followed.

Appellant first contends that the circuit court erred in concluding that he failed to produce sufficient evidence to show that genuine issues of fact remain to be tried with respect to whether the discharge of his employment was motivated by discrimination in violation of the ADA and the ACRA.[4]  Summary judgment may be granted only when there are no genuine issues of material fact to be litigated.  *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark.

---

[3] Alexander titled his alternative request as a "REQUEST FOR SECOND EXTENSION OF TIME TO RESPOND" even though he had already received two extensions.

[4] Appellant does not contend that the circuit court erred in granting summary judgment based on the allegation in his complaint that appellee also violated GINA by unlawfully discriminating against him based on his genetic information, and any argument as to this claim is therefore abandoned.

506, 342 S.W.3d 274. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.* In the context of employment-discrimination cases, our supreme court has noted that an affidavit must contain "[m]ore than mere assertions or possibilities . . . to defeat a motion for summary judgment." *Mack v. Sutter*, 366 Ark. 1, 6, 233 S.W.3d 140, 145 (2006).

The ADA prohibits employers from discriminating against a disabled individual qualified for a job because of the disability of such individual. 42 U.S.C.A. § 12112(a) (Westlaw through Pub. L. No. 114–115 (excluding Pub. L. Nos. 114–94 and 114–95)). To establish a prima facie case of disability discrimination, a plaintiff must show (1) that he or she was disabled; (2) that he or she was qualified to do the essential job functions with or without reasonable accommodation; and (3) that he or she suffered an adverse action due to his or her disability. *See Johnson v. Windstream Commc'ns, Inc.*, 2012 Ark. App. 590 (*Johnson I*). The ACRA provides citizens of this state legal redress for civil-rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses, and ACRA claims are analyzed under the same principles as ADA claims. *Id.* However, the statutes differ

5

in that the ADA includes within its definition of the term "disability" an individual who is "regarded as" disabled by his or her employer, 42 U.S.C. § 12102, and the ACRA does not include such language in its definition. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 954–55, 69 S.W.3d 393, 402 (2002) (refusing to extend coverage of the ACRA to include individuals who are regarded as being disabled by their employers).

Our supreme court has adopted the three-stage, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in analyzing these types of employment-discrimination cases. *Brodie v. City of Jonesboro*, 2012 Ark. 5. The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* Once a prima facie case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. *Id.* If the employer articulates such a reason, the presumption disappears, and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. *Id.*

Our supreme court has additionally made it clear that, even in summary-judgment cases, the circuit court must evaluate employment-discrimination cases using the *McDonnell Douglas* framework and that it must explain its findings. *Brodie, supra.* As in *Brodie* and *Johnson I*, we cannot conclude that the circuit court properly evaluated this case under *McDonnell Douglas.* There is no mention in the circuit court's order about a prima facie case of discrimination, a legitimate, nondiscriminatory reason for the discharge, or pretext for discrimination. *See Brodie, supra; Johnson I, supra; Johnson v. Windstream Commc'ns, Inc.*, 2014 Ark. App. 99 (*Johnson II*). Accordingly, we must reverse and remand this case to the circuit

6

SLIP OPINION

court to explain its ruling on each issue. *Johnson I*, *supra*. As we further explained in *Johnson II*, the circuit court must use the *McDonnell Douglas* framework in reviewing appellee's motion for summary judgment regarding appellant's ADA and ACRA claims and include its analysis in its summary-judgment order. Implicit in these directions is the possibility that the circuit court might determine after its analysis that the claims are not appropriate for summary judgment. *See Johnson II*, *supra*.

In his second point on appeal, appellant contends that the circuit court erred in denying his request for additional time to complete discovery before ruling on appellee's motion for summary judgment. We disagree. A circuit court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed by this court absent an abuse of discretion that is prejudicial to the appealing party. *Bennett v. Lonoke Bancshares, Inc.*, 356 Ark. 371, 155 S.W.3d 15 (2004). In order for this court to reverse the circuit court's denial of a continuance, the appellant must show that the circuit court abused its discretion and that the additional discovery would have changed the outcome of the case. *Vibo Corp. v. State ex rel. McDaniel*, 2011 Ark. 124, 380 S.W.3d 411. Under Arkansas Rule of Civil Procedure 56(f) (2015), the party opposing the motion for summary judgment is required to present an affidavit setting forth the problems the party is having gathering facts to support its opposition to summary judgment. *See id.*; *Jenkins v. Int'l Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994).

While the passage of time is not determinative, our supreme court has explained that it is a factor to be considered. *Jenkins*, *supra*. Appellant filed his complaint on May 2, 2014.

7

Almost a year later, appellee filed its motion for summary judgment. Although appellant's response was initially due on April 2, 2015, the circuit court granted two extensions, giving appellant until May 29, 2015, to file a response. Although appellant filed a response on May 29, 2015, requesting the circuit court to deny the motion for summary judgment, appellant alternatively requested additional time to complete further discovery and incorporate any findings into a subsequent response, despite the fact that appellant had already received two extensions to file his response. Furthermore, even on appeal, appellant fails to adequately explain how he was prejudiced and instead alleges only that he "*may* have been able to provide . . . more evidence of pretext . . . or [evidence] that the reasons given for his termination were not credible." (Emphasis added.) Therefore, under these circumstances, we cannot say that the circuit court abused its discretion, and we affirm on this point on appeal.

Affirmed in part; reversed and remanded in part.

KINARD and GLOVER, JJ., agree.

*Joe D. Byars P.A. Ltd.*, by: *Joe D. Byars, Jr.*, for appellant.

*Jones, Jackson & Moll, PLC*, by: *Kathryn A. Stocks*, for appellee.

SLIP OPINION