

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–16–440

| | |
|---|---|
| ADAM ALEXANDER<br><br>               **APPELLANT**<br><br>V.<br><br>EASTERN TANK SERVICES, INC.<br><br>               **APPELLEE** | **Opinion Delivered** November 9, 2016<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66CV–2014–435]<br><br>HONORABLE JAMES O. COX, JUDGE<br><br>AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Adam Alexander appeals from the Sebastian County Circuit Court's April 19, 2016 order and April 27, 2016 amended order granting appellee Eastern Tank Services' motion for summary judgment. These orders were filed after our court remanded for the trial court to analyze the appropriate factors related to whether there was employment discrimination in deciding whether the employer was entitled to judgment as a matter of law. *See Alexander v. E. Tank Servs., Inc.*, 2016 Ark. App. 185, 486 S.W.3d 813. Now on appeal, appellant contends that the circuit court erred in concluding that he failed to produce sufficient evidence to show that genuine issues of fact remain to be tried with respect to whether the discharge of his employment was motivated by discrimination in violation of the Americans with Disabilities Act (ADA) and the Arkansas Civil Rights Act (ACRA). We affirm.

Eastern Tank Services, Inc. (Eastern) is in the business of hauling water for oil and gas rigs in commercial trucks. Alexander began his employment with Eastern as a dispatcher in September 2011 at its Fort Smith, Arkansas, location. The dispatcher job required that Alexander answer calls and direct drivers to various locations for hauling purposes. Appellant was terminated in August 2012.

Appellant filed his complaint against appellee Eastern on May 2, 2014. He alleged that Eastern unlawfully terminated his employment in violation of the ADA, the ACRA, and 42 U.S.C. § 2000ff (GINA).[1] Appellant alleged that he began seeing a therapist at Vista Health in Barling, Arkansas, on August 9, 2012, for biweekly outpatient therapy sessions for the management of stress. He provided a copy of a note explaining the need for his therapy to his safety manager, Paul McGehee, and Barry Zielinski with Eastern. Alexander also alleged that he revealed to his employer that he went to the therapist to address anxiety and stress, that his therapist mentioned the possibility that he had Asperger's Syndrome, that he was scheduled to be tested in the future,[2] and that he felt he could still handle his work without any problems. His therapy sessions would not interfere with his work schedule. Alexander stated that he subsequently overheard McGehee speaking on his cell phone stating that "we are not going to have someone with that condition working in this office." However, he did not overhear whom McGehee was speaking about or to whom the call was made.

[1]The allegation regarding appellant's genetic information under GINA is not at issue on appeal, and we therefore omit any discussion of GINA.

[2] In Alexander's deposition, he explained that he was officially diagnosed with Asperger's Syndrome on May 21, 2014, after he underwent testing.

Alexander's employment was subsequently terminated on August 20, 2012, and Eastern told him that he was being "laid off." Appellant alleged that not long after being laid off, a person with less seniority was placed into appellant's job position. Alexander further alleged in his complaint that he was wrongfully terminated because of his disability or because he was regarded as having a disability, in violation of the ADA and ACRA.

Appellee filed an answer on May 30, 2014, denying that Alexander's termination of employment had anything to do with any alleged medical condition or alleged disability, and furthermore, appellee did not understand Alexander to be disabled nor did it treat Alexander as if he were disabled. Appellee denied all material allegations and asked that the complaint be dismissed.

Appellee filed a motion for summary judgment on March 11, 2015. In its motion, Eastern alleged that Alexander had failed to establish a prima facie case for discrimination under the ADA or ACRA. Eastern asserted that Alexander was laid off because its largest customer was reducing the number of loads, and fewer dispatchers were needed; thus, Alexander was terminated due to business necessity. Eastern stated that Alexander's position had never been filled, and there were fewer dispatchers at present than there were at the time of Alexander's termination. Eastern maintained that the layoffs were directed primarily by seniority. Eastern further alleged that Alexander's alleged disability had no impact on its decision; instead, Alexander had the least seniority except for one other dispatcher who actually occupied the position of slip seat, meaning that the employee could either dispatch or drive because he held a commercial driver's license.

3

Eastern attached several exhibits to its motion, including depositions and affidavits, as well as Alexander's Equal Employment Opportunity Commission (EEOC) intake questionnaire. In his EEOC questionnaire filled out in December 2012, Alexander stated that he worked at Eastern's Fort Smith location, and he believed Eastern to employ between 101 and 500 employees. Alexander did not claim to have a disability but claimed that "the organization treats me as if I am disabled." Alexander believed that he was terminated as a consequence of revealing that he might have Asperger's Syndrome.

In McGehee's affidavit, he stated that the decision to lay off Alexander was made in early August before Alexander had ever mentioned Asperger's Syndrome. The first layoff occurred on August 8, 2012. McGehee explained in his affidavit that Alexander's termination was delayed until August 20, 2012, because other dispatchers were out sick or on vacation. McGehee stated that appellant had satisfactorily performed his job since his hire in September 2011 and therefore his possible Asperger's Syndrome diagnosis had no impact on his position with Eastern. McGehee stated that Eastern was advised by one of its largest customers that it would be significantly reducing its daily truck loads; that Alexander was the newest dispatcher without a commercial driver's license; that the only dispatcher with less seniority also had a commercial driver's license and this dual capacity was an asset for Eastern; and that after appellant's being laid off, there had not been more than three dispatchers per shift. McGehee swore that fourteen other employees were laid off in August and September 2012; that due to voluntary resignations and the reduction in force, Eastern's employees were reduced from 153 in July 2012 to 109 in October 2012; and that as of January 2015, Eastern

had 90 employees.

In the appended portions of Alexander's deposition, he explained that the only time he felt that he was treated unfairly during his tenure at Eastern was from the time of the discussion about therapy sessions to the point that he was terminated. Alexander said that after he revealed that he would be having therapy sessions, there was a "different type of vibe between me and the management." Alexander agreed that quite a few people were stressed out at that time because of layoffs, and he stated that the only legitimate reason he could think of for Eastern reducing its manpower was that they had four night dispatchers and three day dispatchers. Alexander agreed that he was the least senior dispatcher, except for the one person who also held a commercial driver's license.

After receiving extensions of time to respond to the motion for summary judgment, appellant filed a partial response in opposition to the motion for summary judgment on May 29, 2015. Appellant appended his own deposition testimony and an affidavit, deposition testimony from McGehee, and samples and summaries of Eastern's business records. Appellant alleged that there were genuine issues of fact that still existed and that appellee's motion for summary judgment should be denied in its entirety.[3] Appellant challenged the accuracy of the affidavit and business documentation provided by Eastern, and appellant

---

[3]Appellant also asked for additional time to conduct further discovery to uncover more precise data on which personnel had been laid off, when, and in what capacity this affected Eastern's business, as well as more precise data on the business generated or lost in the relevant time period. The request was denied. In the first appeal, our court affirmed the trial court's decision to deny additional time for further discovery and to respond. This is not an issue on appeal.

5

argued that dispatchers were not required to have commercial driver's licenses, undercutting the explanation about why appellant was laid off and the remaining less senior dispatcher was not. Alexander agreed that he was aware that fourteen other persons were laid off in August and September 2012, but Alexander thought those were truck drivers and that the loss in truck drivers did not affect the dispatcher work load. He stated that he felt discriminated against because of the possibility of having a disability, and he asserted that genuine issues of fact existed as to the truth of the reason given for his termination. Appellant focused on the timing of the "true" reduction in business and consequential layoffs, asserting that this did not appear to occur until some time in September 2012, after he was laid off.

After Eastern filed a reply, the circuit court filed an order on July 14, 2015, granting the summary-judgment motion without articulating the basis for entering judgment in favor of the employer. In appellant's first appeal, we reversed and remanded for the trial court to explain its findings under the analysis required by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alexander v. E. Tank Servs., Inc.*, 2016 Ark. App. 185, 486 S.W.3d 813.

On remand, the trial court entered an "Order Granting Summary Judgment on Remand" on April 19, 2016, and an "Amended Order Granting Summary Judgment on Remand" on April 27, 2016.[4] The trial court found that appellant had failed to establish a prima facie case of discrimination, acknowledging that there were three criteria that a plaintiff must show to establish a prima facie case of disability discrimination: (1) that he or she was

---

[4]There is no material difference between the two orders as relates to appellant's arguments on appeal.

disabled; (2) that he or she was qualified to do the essential job functions with or without reasonable accommodation; and (3) that he or she suffered an adverse action due to his or her disability. *See Johnson v. Windstream Communications, Inc.*, 2012 Ark. App. 590 (*Johnson I*). The trial court recited that appellant did not receive an official diagnosis of Asperger's Syndrome until May 2014, but had alleged that on August 9, 2012, he had advised Eastern that he "might" have this syndrome and needed therapy. The parties had agreed that appellant was qualified to do the essential functions of his job. It was undisputed that appellant was terminated on August 20, 2012, at which time other employees were also being laid off. The trial judge concluded, referencing appellant's exhibits accompanying his response, that:

> The only evidence that Eastern Tank allegedly discriminated against the Plaintiff, because of him possibly having Asperger's Syndrome, is from the Plaintiff's own testimony that he disclosed he might have Asperger's Syndrome to Eastern Tank and alleged he overheard a conversation later where Paul McGehee alleged[ly] said "we're not going to have somebody with that condition working in this office" while he walked past the Plaintiff's desk. The Plaintiff did not overhear who McGehee was speaking about. The only time he thought he was treated unfairly was in the days after he gave the note about needing therapy because it seemed a "different type of vibe" and the layoff itself.

The trial court concluded that appellant failed to establish a prima facie case of discrimination.

The trial court went further, however, and determined that even if appellant had surmounted the first hurdle of presenting a prima facie case, the employer had sufficiently articulated a legitimate, nondiscriminatory reason for discharging appellant. The trial court recited that the first employee layoff was on August 8, 2012, prior to appellant seeking any treatment for possible Asperger's Syndrome on August 9, 2012, and that fourteen other employees were laid off in August and September 2012. The employer provided affidavits

7



to support the layoff process, including sworn statements that Eastern had 153 employees at its peak in July 2012 and 109 employees by October 2012. At the time of appellant's layoff, there had been four night-shift dispatchers and three day-shift dispatchers, but after the reduction in force, there had not been four dispatchers on a shift. The trial court referenced appellant's own deposition in which appellant recognized that of the dispatchers, he had the least seniority except for one who was in "the slip seat position," where that person had the ability to be both a dispatcher and a truck driver, which required a commercial driver's license that appellant did not have. The trial court referenced appellant's own exhibit in which he demonstrated "basically a 20% reduction in the overall loads being hauled" by Eastern between January and August 2012, showing an 885 load reduction in that period of time. Eastern provided evidence that its largest customer, Southwestern Energy, had advised Eastern that it was reducing the daily loads to be hauled by Eastern from approximately 130 to 160 loads down to 100 loads. The trial court found that Eastern had produced sufficient evidence that it had a legitimate, nondiscriminatory reason for discharging appellant given the substantial reduction of loads it was hauling and the fact that it was laying off other employees. The trial court found that the only evidence of pretext was appellant's allegedly having heard one comment by Eastern's safety manager stating that "we are not going to have someone with that condition working in this office." The trial court noted that, even if this statement were taken as true, there was no evidence to support that this comment was about appellant, and thus appellant's claim must fail. The trial court recited that because appellant's claim failed under the ADA, it likewise failed under the ACRA, which is guided by the federal

decisions on this topic. This timely appeal followed.

Appellant contends that the circuit court erred in concluding that he failed to produce sufficient evidence to show that genuine issues of fact remain to be tried with respect to whether the discharge of his employment was motivated by discrimination in violation of the ADA and ACRA. We affirm the trial court because we agree that appellant failed to present a prima facie case of disability discrimination.

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

In the context of a discrimination case, our supreme court has noted that "[m]ore than mere assertions or possibilities must be asserted to defeat a motion for summary judgment." *Mack v. Sutter*, 366 Ark. 1, 6, 233 S.W.3d 140, 145 (2006). Stated another way, general statements in affidavits and deposition testimony are insufficient to withstand a properly supported motion for summary judgment. *See also Stanback v. Best Diversified Prods., Inc.*, 180

F.3d 903, 909 (8th Cir. 1999); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997); *Berg v. Bruce*, 112 F.3d 322, 327 (8th Cir.1997). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). There is no discrimination-case exception to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Id*.

The ADA prohibits employers from discriminating against a disabled individual qualified for a job because of the disability of such individual. 42 U.S.C.A. § 12112(a). To establish a prima facie case of disability discrimination, a plaintiff must show (1) that he or she was disabled; (2) that he or she was qualified to do the essential job functions with or without reasonable accommodation; and (3) that he or she suffered an adverse action due to his or her disability. *See Johnson I, supra*. The ACRA provides citizens of this state legal redress for civil-rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses, and ACRA claims are analyzed under the same principles as ADA claims. *Id*. However, the statutes differ in that the ADA includes within its definition of the term "disability" an individual who is "regarded as" disabled by his or her employer, 42 U.S.C. § 12102, and ACRA does not include such language in its definition. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 954-55, 69 S.W.3d 393, 402 (2002) (refusing to extend coverage of ACRA to include individuals who are regarded as being disabled by their employers).

Our supreme court has adopted the three-stage, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in analyzing these types of employment-discrimination cases. *Brodie v. City of Jonesboro*, 2012 Ark. 5. The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* Once a prima facie case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. *Id.* If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. *Id.*

We hold that the trial court was correct in its conclusion that appellant failed to present a prima facie case of discrimination. We therefore need not, and do not, discuss the remaining factors related to employment discrimination. Where a plaintiff fails to present a prima facie case that the adverse employment action was due to the plaintiff's disability, the plaintiff has failed to establish causation, in which case summary judgment is appropriate. *See, e.g., Norman v. Union Pac. R.R. Co.*, 606 F.3d 455 (8th Cir. 2010). In order to establish a prima facie case in a reduction-in-force situation, the plaintiff must also show that his disability was a determining factor in his termination. *See Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1318 (8th Cir. 1996). At all times, the plaintiff bears the ultimate burden of demonstrating that discrimination was the real reason for the employer's actions. *Wilking v. Cty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998). Courts do not sit as a super-personnel department that reexamines an entity's business decisions. *See id.*

Even assuming an issue of fact remained as to appellant having a disability or being

SLIP OPINION

perceived as such, he did not establish that his termination was motivated by his disability.[5] At a minimum, appellant must show that the decision makers knew about the alleged disability. *Kozisek v. Cty. of Seward*, 539 F.3d 930, 936 (8th Cir. 2008). And in the end, even awareness of alleged disability, without more, is not enough to maintain this claim. *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 736 (8th Cir. 2010). Here, too, the temporal proximity is not enough to carry the day along with the remaining sparse evidence. *See Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 805 (8th Cir. 2014); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001).

Appellant did not rebut Eastern's proof via affidavit that the first employee was laid off on August 8, 2012, prior to appellant even mentioning the possibility that he might have a disability. Appellant did not rebut the employer's affidavit that the possibility of appellant having Asperger's Syndome did not enter into the decision to lay off appellant because that decision was made prior to his disclosure. Nor did appellant rebut the fact that appellant (who had dispatcher seniority over only one other dispatcher who was dually qualified to dispatch and drive trucks) was laid off but never replaced by another employee. Appellant did not rebut the fact that fourteen other employees were laid off in August and September 2012, nor did appellant rebut the fact that there was a substantial decline in employees from and after mid–2012. Appellant even offered an exhibit showing that there was an approximate 20% reduction in truck loads being hauled by Eastern between January and August 2012. The

---

[5]This claim would fail under the ACRA as a matter of law because appellant's claim is that he was perceived as having a disability, a definition not encompassed under Arkansas law on this topic. *See Faulkner, supra.*

SLIP OPINION

alleged overheard comment was insufficient proof of causation given that the comment was not shown to be related to appellant. Alexander's effort to create a discriminatory purpose behind his being laid off was simply not supported by proof but was rather undergirded by mere allegations and suppositions that did not rise to the level of proof sufficient to withstand summary judgment. Appellant failed to show that there was a genuine issue as to a material fact or that reasonable differing inferences could have been drawn from the undisputed facts. Therefore, the circuit court did not err in granting summary judgment for Eastern. *Compare Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274.

Affirmed.

GLOVER and HIXSON, JJ., agree.

*Byars & Hall PLLC*, by: *Joe D. Byars, Jr.*, for appellant.

*Jones, Jackson & Moll, PLC*, by: *Kathryn A. Stocks*, for appellee.