Cite as 2020 Ark. App. 531

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-20-147

| | |
|---|---|
| | **Opinion Delivered:** November 18, 2020 |
| TOMMY LEE THIGPEN<br>APPELLANT | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CV-19-47] |
| V. | HONORABLE ROBIN CARROLL, JUDGE |
| CITY OF EL DORADO, ARKANSAS<br>APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Tommy Lee Thigpen appeals from an order granting summary judgment in the Union County Circuit Court in favor of appellee, the City of El Dorado, Arkansas (the City). On appeal, Thigpen argues that it was reversible error for the circuit court to "grant judgment in favor of the [City] without allowing a trial on the properly pled counterclaim or the [assertion] of the affirmative defenses of set-off when there were genuine questions of fact at issue." We affirm.

I. *Relevant Facts*[1]

A building in El Dorado, Arkansas, had been vacant for approximately ten years and was in a state of extensive disrepair. On February 4, 2018, Thigpen approached the

---

[1]We note that there are several discrepancies with the dates throughout Thigpen's trial pleadings, motions, and appellant brief that cannot be reconciled. However, these discrepancies do not affect the disposition of this case.

representatives of the City and advised the City that he was considering purchasing the property and starting a restaurant in the building if the City would give him time to rehabilitate the building and bring it into code compliance. The representatives of the City agreed with Thigpen's proposition, and later that day, the mayor also agreed. On the basis of this agreement, Thigpen purchased the property on April 12, 2018. The scant evidence in the record reveals that soon thereafter, Thigpen began conversing with contractors and making plans, drawings, and financial projections for his new restaurant. According to Thigpen, work on the building started on July 9, 2018. Apparently, at some point during this time frame, the roof of the building collapsed.[2] On July 12, 2018, the City issued a "Notice of Unsafe Building," which provided the following in pertinent part: "[T]his unsafe and dangerous building is ordered to be removed posthaste." At some point—the date is uncertain in the record—the City demolished the building.[3] The City subsequently submitted an invoice to Thigpen in the amount of $11,496 to reimburse the City for the costs incurred in the demolition. Thigpen refused to pay the invoice, and the City commenced this litigation.

Thigpen filed an answer and counterclaim. He generally denied the allegations in the complaint. In his counterclaim, Thigpen alleged that he expended funds in an effort to renovate the building on his property to "bring the property up to compliance with the Code." He further alleged that he did so in reliance on a promise made by city officials that he would be given adequate time to rehabilitate the building. Thigpen alleged that the City

_____

[2]See footnote 1.

[3]See footnote 1.

2

intentionally destroyed the building with malice in breach of his "quasi-contract" with the City. Therefore, Thigpen prayed that he be awarded a judgment against the City for breach of contract, punitive damages, attorney's fees, costs, and any other relief to which he was entitled.

The City filed an answer generally denying Thigpen's counterclaim and prayed that the circuit court dismiss Thigpen's counterclaim. The City attached the Notice of Unsafe Building dated July 12, 2018, sent from Fire Chief Chad Mosby to Robert Edmonds, the public works director. Attached to the Notice were four photographs of the building depicting the condition of the building and the collapsed roof. The City alleged that the notice was delivered to Thigpen at the time of the removal of the unsafe building and is dispositive of all allegations in Thigpen's counterclaim.

Thereafter, the City filed a motion for summary judgment. The City attached an affidavit from Fire Chief Mosby, various city documents, another copy of the Notice of Unsafe Building, photographs of the building, a certificate of Fire Chief Mosby's qualifications, and copies of the relevant portions of the City's fire code. The City argued that there was no genuine issue of fact as to the necessity of the removal of the building in question based on the undisputed facts. According to the City, while the property had previously been zoned for commercial use, the property had reverted back to residential status approximately ten years prior to the litigation, and Thigpen had never filed any application to have the property rezoned back to commercial status. The property had been condemned in 2016. The City further explained that once the building's roof subsequently collapsed by July 12, 2018, no building or other type of permits would have been issued by

3

the City to repair the building because the code required it to be demolished. Fire Chief Mosby stated in his affidavit that he ordered the immediate removal of the building pursuant to the state and national codes adopted by the City. Further, the City argued that it was entitled to reimbursement for the costs of demolition pursuant to Arkansas Code Annotated section 14-54-903(b) (Supp. 2019) and City Resolution No. 1461. Thus, the City prayed that it be granted summary judgment and Thigpen's counterclaim be dismissed.

Although Thigpen admitted the veracity of the documents attached to the City's motion for summary judgment, Thigpen denied that summary judgment should be granted in this case. Thigpen attached several documents in support of his response to the City's motion for summary judgment, including a photograph taken of the building on April 5, 2018, documents from various contractors providing quotes for renovations to the building, a business plan, and an affidavit from Thigpen. In his affidavit, Thigpen alleged that Robert Edmonds, the director of public works, promised him on April 5, 2018, that if Thigpen purchased the property the City would give him adequate time to address any code violations even though the property had been condemned.[4] Thigpen further alleged that he relied on Mr. Edmonds's promise when he purchased the property on April 12, 2018, and moved forward with preparations to renovate the building. Thereafter, Thigpen alleged that Mr. Edmonds confirmed the substance of the statements made on April 5, 2018, at a subsequent meeting on February 4, 2019,[5] when Thigpen met with former mayor Frank Hash and Mr. Edmonds. Based on the facts alleged in Thigpen's affidavit, Thigpen argued

---

[4]See footnote 1.

[5]See footnote 1.

in his responsive brief that a quasi-contract had been formed when Thigpen relied on Mr. Edmonds's promise and the City ratified Mr. Edmonds's actions in the subsequent meeting with former Mayor Hash. Thus, Thigpen argued that he could prevail and that the matter should proceed to trial.

In its reply, the City argued that Thigpen's arguments in response to its motion lacked merit. The City explained that only the fire chief has the authority to deem a building unsafe and order the removal, which was not contested by Thigpen. Therefore, the City argued that once the roof subsequently collapsed, the building was required to be removed, and any alleged agreements that occurred prior to the collapse were irrelevant. Further, the City claimed that no building permits for a commercial building could have been issued to Thigpen because the property had reverted to its residential status due to the building's abandonment approximately ten years before this litigation started, and Thigpen had never filed any rezoning application with the El Dorado Zoning Board. The City also attached an affidavit from Debbie Stinson, the administrative assistant to the director of public works. Ms. Stinson stated in her affidavit that although Thigpen could have sought a building permit to build a residence, Thigpen could not have received a permit to build a commercial building without first obtaining rezoning from the El Dorado Zoning Board.

A hearing was held on the City's motion for summary judgment on October 22, 2019, wherein the circuit court orally ruled in the City's favor granting summary judgment. On November 7, 2019, the circuit court filed a written order memorializing its ruling and awarded the City a judgment for $11,496 plus all costs. This appeal followed.

5

## II. *Standard of Review*

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee*, *supra*. However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003). On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Greenlee*, *supra*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.*[6]

---

[6]Thigpen erroneously relies on an incorrect standard of review in his appellate brief. Thus, we have set out the correct standard of review in this opinion.

III.  *Thigpen's Counterclaim*

Thigpen argues in a conclusory and unconvincing manner that the circuit court erred in granting summary judgment on the City's claim without giving him a trial on his counterclaim.  Although he cites *Day v. City of Malvern*, 195 Ark. 804, 114 S.W.2d 459 (1938), Thigpen makes no cogent or persuasive legal argument as to why that case is relevant to the issue before us or why the circuit court specifically erred in granting summary judgment under the facts of this particular case.  It is axiomatic that this court will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority.  *Mann v. Pierce*, 2016 Ark. 418, 505 S.W.3d 150.  It is a well-settled principle of appellate law that we will not make a party's argument for him or her.  *Foster v. Estate of Collins*, 2017 Ark. App. 65, 511 S.W.3d 900.  As such, we must affirm.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*F. Mattison Thomas III*, for appellant.

*Harry C. Kinslow*, City Attorney for El Dorado, Arkansas, for appellee.