Cite as 2025 Ark. App. 306

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-636

| | |
|---|---|
| | **Opinion Delivered** May 14, 2025 |
| CITY OF PINE BLUFF, ARKANSAS ADVERTISING AND PROMOTION COMMISSION<br>APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35CV-22-457] |
| V. | HONORABLE ROBERT H. WYATT, JR., JUDGE |
| ARAMARK EDUCATIONAL SERVICES, LLC<br>APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant City of Pine Bluff, Arkansas Advertising and Promotion Commission

(PBA&P) appeals from an order of the Jefferson County Circuit Court that granted summary

judgment to appellee Aramark Educational Services, LLC (Aramark). In the summary-

judgment order, the circuit court ruled that Aramark is exempt from a tax previously

imposed by PBA&P against Aramark and ordered PBA&P to refund the previously paid tax

assessments.[1] PBA&P now appeals, arguing that (1) the circuit court lacked subject-matter

---

[1]After this appeal was filed in our court, we certified the case to the supreme court pursuant to Arkansas Supreme Court Rule 1-2(a)(8), which provides that appeals required by law to be heard by the supreme court shall be filed in that court. We cited Ark. Code Ann. § 26-18-406(c)(2) (Supp. 2023) of the Arkansas Tax Procedure Act, which provides that an appeal of a circuit court decision under this section lies from the circuit court to the

jurisdiction; (2) the circuit court erred in denying PBA&P's motion to complete and/or supplement the record; (3) the circuit court erred in denying PBA&P's request to enlarge the time within which to respond to the motion for summary judgment; (4) Aramark failed to present material facts or law entitling it to an exemption from the tax; and (5) the circuit court abused its discretion in refusing to reconsider its order granting summary judgment. We affirm.

## I. *Facts and Procedural History*

Aramark is a for-profit organization engaged in providing food-service operations at colleges and universities. In July 2017, Aramark entered into a Food Services Management Agreement (the "Agreement") with the University of Arkansas at Pine Bluff (UAPB). This Agreement provides that UAPB "engages Aramark, on an exclusive basis, to provide UAPB with meals . . . for UAPB to resell to its students, faculty, staff, and guests, including residential dining, retail, catering and athletic concessions, on UAPB's campus." The Agreement provides further that "Aramark shall manage the Campus Food Services Program" and that "Aramark shall provide and pay a staff of its employees on duty on UAPB's premises for the efficient management of the Campus Food Services Program." Regarding "Board Plan Rates," the Agreement states that "Aramark agrees to prepare and serve meals to UAPB for UAPB to resell to its students participating in the Board Plan at the following rates: . . . ," which is followed by a chart setting forth the applicable rates to be

---

supreme court. The supreme court denied certification and declined to accept jurisdiction. Accordingly, our court has jurisdiction of this appeal.

2

paid by UAPB to Aramark for the various meal plans that UAPB in turn offers to its students. The Agreement also provides that Aramark shall provide casual meals (single meals) at specific rates to UAPB's faculty, staff, guests, and students not participating in the Board Plan.

PBA&P is the local taxing agency responsible for assessing and collecting taxes on gross receipts for food products sold in the city pursuant to the provisions in section 13-47 of the Code of Ordinances of the City of Pine Bluff, which is known as the PBA&P gross receipts tax collection and enforcement ordinance (the "PBA&P Ordinance").[2] Section 13-47(d)(1)(b) provides:

> [A] tax in the sum of two percent (2%) percent shall be levied in the city upon the portion of the gross receipts or gross proceeds received by restaurants, cafes, cafeterias . . . and similar businesses, from the sale of prepared food and beverages for on or off-premises consumption, but such tax shall not apply to such gross receipts or gross proceeds of organizations qualified under section 501(c)(3) of the Federal Internal Revenue Code.

Pine Bluff, Ark., Code of Ordinances § 13-47(d)(1)(b) (1990).

PBA&P audited Aramark's operation of its food-services program at UAPB during the periods from July 2017 through April 2020 and May 2020 through April 2022 and took the position that Aramark had failed to remit the 2 percent tax for all of its food sales at UAPB. Aramark challenged the alleged deficiency and specifically claimed an exemption from paying taxes on the meal plans Aramark had sold to UAPB that were resold by UAPB to its students. After administrative hearings, PBA&P disagreed with Aramark and issued

---

[2]Section 13-47 is also referred to in the record as City of Pine Bluff Ordinance No. 6669.

determinations that Aramark was required to account for its income from such food services and pay the associated tax, in addition to interest and penalties, as authorized by the PBA&P Ordinance.

On March 3, 2022, PBA&P issued a letter to Aramark stating that Aramark's total tax liability on the prepared meals at UAPB from July 2017 through April 2020 was $316,418.51. The letter stated, "This letter is an attempt to collect that debt." It stated further, "Aramark is entitled to seek judicial relief from the final determination of the A&P Commission within thirty (30) days of receipt of this notice pursuant to the City of Pine Bluff Ordinance No. 6669." Finally, the letter warned that if Aramark failed to make arrangements to pay the full amount of the tax debt, PBA&P would issue a certificate of indebtedness to the circuit clerk and would "pursue all remedies authorized by the enclosed ordinance for the collection of the tax debt." On March 31, 2022, Aramark paid the full tax assessment of $316,418.51, and in an accompanying letter, it informed PBA&P that it had made this payment within thirty days of the assessment and that such payment was made "[p]ursuant to the rights and requirements provided and set forth in Section 13-47(b) and (h) of the Code of Ordinances of the City of Pine Bluff."[3]

On May 25, 2022, PBA&P issued a letter to Aramark stating that Aramark's total tax liability on the prepared meals at UAPB from July 2017 through April 2020 was $127,923.67. The letter contained identical language as the March 3, 2022, letter with

---

[3]These subsections pertain to judicial relief from a tax deficiency established by PBA&P.

4

respect to the demand for payment and Aramark's entitlement to seek judicial relief. On June 7, 2022, Aramark paid the full tax assessment of $127,923.67, and in an accompanying letter, it informed PBA&P that it had made this payment within thirty days of the assessment and that such payment was made "[p]ursuant to the rights and requirements provided and set forth in Section 13-47(b) and (h) of the Code of Ordinances of the City of Pine Bluff."

On June 30, 2022, Aramark filed a complaint in the Jefferson County Circuit Court seeking to have the aforementioned paid tax assessments—wherein it stated the assessments were paid under protest—refunded based on its claim of a sale-for-resale tax exemption. Aramark stated that the students living on campus are required to purchase a meal plan from UAPB. Aramark stated further that, pursuant to the plain terms of the Agreement between Aramark and UAPB, Aramark sold the meal plans to UAPB, who then resold the meal plans to students. Aramark alleged that it sold meal plans only to UAPB and did not sell meal plans to students. Aramark stated that there are two separate contractual agreements: the Agreement between Aramark and UAPB (to which no student was a party), and UAPB's Residential Life Student Housing Contract (the "Room and Board Contract") with its students (to which Aramark was not a party). Thus, there was no privity of contract between Aramark and any student. According to the complaint, the amount Aramark charged UAPB for the meal plans is less than the amount UAPB charged the students for the meal plans, and UAPB keeps the difference. With respect to these meal plans, Aramark alleged that it

was exempt from the 2 percent tax levied by PBA&P under a sale-for-resale exemption enacted by the General Assembly, as discussed below.[4]

Section 13-47(d)(1)(b) of the PBA&P Ordinance sets forth the 2 percent tax on gross receipts or gross proceeds received by restaurants, cafeterias, and other similar businesses. Section 13-47(b) provides:

> The provisions of this section shall be cumulative to the Arkansas Gross Receipts Acts of 1041, A.C.A. § 26-52-101 et. seq and the Arkansas Tax Procedure Act § 26-18-101, et. seq., the provisions of which so far as practicable, shall be deemed incorporated herein as applicable with respect to the enforcement and collection of the Advertising and Promotion Tax. Further, this section shall be in addition to any other right or remedy that may now or hereafter be available concerning or relating to enforcement and collection of the Advertising and Promotion Tax.

Pine Bluff, Ark., Code of Ordinances § 13-47(d). Arkansas Code Annotated section 26-52-401(12)(A) (Supp. 2023) provides a tax exemption for

> [g]ross receipts or gross proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles purchased, whether within or without the state if the sales within the state are made to persons to whom gross receipts tax permits have been issued as provided in § 26-52-202.

Arkansas Code Annotated section 26-52-103(31)(A) (Supp. 2023) defines "sale" to include "the transfer of either the title or possession . . . of tangible personal property." "Tangible personal property" means "personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses." Ark. Code Ann. § 26-52-103(35)(A).

---

[4]In its complaint, Aamark conceded that its cash sales of single meals to persons not on a University meal plan are subject to the 2 percent tax. Aramark stated that it had properly remitted the tax on these cash sales and claimed no exemption for those sales.

In its complaint, Aramark alleged that in regard to the meal plans it sold to UAPB, it was exempt from the 2 percent tax under the sale-for-resale exemption in Ark. Code Ann. § 26-52-401(12)(A).  Aramark cited the first paragraph of the Agreement between Aramark and UAPB, which explicitly provides that UAPB engages Aramark "to provide UAPB with meals" for UAPB "to resell to its students, faculty, staff, and guests."  Aramark asserted that its sale of meal-plan meals to UAPB is a sale for resale and not a sale to the ultimate consumer because Aramark did not receive any consideration for same from the ultimate consumer, the students.  Rather it was UAPB acting as a reseller that sold Aramark's products to the ultimate consumers, the students, who purchased meal plans from the university. Accordingly, Aramark sought a judgment against PBA&P for a refund of its paid tax assessments of $316,418.51 and $127,923.67.

On July 22, 2022, PBA&P filed an answer to Aramark's complaint.  In its answer, PBA&P denied that Aramark was entitled to a tax exemption and asked that the complaint be dismissed.

On April 27, 2023, Aramark filed a motion for summary judgment.  In its motion, Aramark argued that the undisputed facts showed it was entitled to a tax exemption for the meal plans it sold to UAPB that were resold by UAPB to its students under the sale-for-resale exemption set forth in Ark. Code Ann. § 26-52-401(12)(A).  Aramark also argued that it was not liable for the 2 percent tax because these sales transactions qualified as tax-exempt drop

7

shipments under Arkansas Gross Receipts Tax Rules,[5] specifically Regulation GR-5(D), which provides:

> A drop shipment is a sales transaction involving three parties—two sellers and one consumer. The first seller sells property to the second seller, who sells to the consumer; however, the first seller delivers the property directly to the consumer. The taxability of drop shipments depends on the location of the second seller and the consumer. *The location of the first seller is irrelevant because the sale from the first seller to the second seller is an exempt sale for resale.*

006.05.212-GR-5 Ark. Admin. Code (WL current through March 15, 2025) (emphasis added). Regulation GR-53(H) provides:

> In the case of drop shipment sales, a third-party vendor (e.g. drop shipper) may claim a resale exemption based on an exemption certificate provided by its customer (e.g. the re-seller) or any other acceptable information available to the third-party vendor evidencing qualification for a resale exemption regardless of whether its customer (e.g. the re-seller) is registered with the Department to collect and remit sales or use tax.

006.05.212-GR-53 Ark. Admin. Code (WL current through March 15, 2025). Aramark attached numerous exhibits in support of its summary-judgment motion, including the Agreement between Aramark and UAPB, the Room and Board Contract between UAPB and its students, and the affidavits of Dr. Carla Martin and Sam Zamrick.

In Dr. Martin's affidavit, she stated that she is the vice chancellor for finance and administration at UAPB. Dr. Martin is familiar with UAPB's agreements with its food-service vendors and its agreements with its meal-plan students. She stated that UAPB

---

[5]These rules were promulgated pursuant to Arkansas Code Annotated section 26-52-105 (Repl. 2020) of the Arkansas Gross Receipts Act, which provides that "[t]he administration of this chapter shall be exercised by the Secretary of the Department of Finance and Administration" and that "[t]he secretary shall promulgate rules that prescribe forms for the proper enforcement of this chapter."

requires its residential students to purchase a meal plan under the Room and Board Contract and that under UAPB's Agreement with Aramark, Aramark sells the meal plans to UAPB, which UAPB resells to its students. Dr. Martin stated that the price for each meal plan to the students is independently determined by UAPB and that Aramark does not set that price. Dr. Martin stated that when a student purchases a meal plan through the university, the specific meal plan chosen by the student is memorialized on a student ID card, which is linked to the student's account and "loaded" with a certain number of meals by the university. The payment is made by the student to UAPB in advance of the meals being served, and no payment changes hands when the meal-plan student "swipes" his or her ID card at the cafeteria. Dr. Martin stated that any payment issues with a student regarding a meal plan are handled by UAPB alone and that Aramark has no authority over these issues. Dr. Martin stated that each week, UAPB provides Aramark with the number of meal plans the university has active for the week, and UAPB, not the student, makes payment to Aramark on a weekly basis.

Sam Zamrick is Aramark's district manager for the south region in its collegiate hospitality division. In Mr. Zamrick's affidavit, he stated that Aramark's sale of meal plans to UAPB is for UAPB's resale to its meal-plan students. Mr. Zamrick stated that Aramark's contract is with UAPB only, that Aramark does not sell meal plans or meal-plan meals to students, that Aramark does not collect any money from students for meal-plan meals, and that Aramark has no knowledge of a student's meal-plan account. Mr. Zamrick stated that Aramark is a party to the Agreement but is not a party to the Room and Board Contract.

9

He also stated that Aramark receives gross receipts for student meal plans only from UAPB and not from any student.

On the basis of these affidavits, the Agreement, and the Room and Board Contract as applied to the applicable law cited in Aramark's summary-judgment motion, Aramark argued that it was entitled to a tax exemption as a matter of law. The summary-judgment motion was served on PBA&P's counsel of record through the eFlex system on April 27, 2022, which, under Ark. R. Civ. P. 56(c), made PBA&P's response due twenty-one days later, on May 18, 2022. When PBA&P failed to file a response by that date, Aramark sent a letter to the circuit court on May 19, 2022, stating that PBA&P did not timely file any response or supporting affidavits and asking that its summary-judgment motion be granted.

Six days later, on May 25, 2023, PBA&P filed a motion for enlargement of time to respond to Aramark's summary-judgment motion. In this motion, PBA&P's counsel stated, "In spite of counsel's diligence in monitoring notices from the court system involving cases in which he is counsel, for reasons counsel is unable to explain, undersigned was not provided a copy of the pleading by eflex to his e-mail." PBA&P's counsel stated that it was not until four days after the deadline that he was "alerted" to the summary-judgment motion by "persons with knowledge." PBA&P's counsel stated that his failure to timely respond was the result of inadvertence and unavoidable casualty and asserted that the circuit court has considerable latitude to extend the response time for good cause. PBA&P's counsel requested an enlargement of time to file his response though June 30, 2022. In a subsequently filed affidavit, PBA&P's counsel confirmed that the summary-judgment

10

motion was sent to his email address through the eFlex system. The circuit court never ruled on this motion for enlargement of time.

On June 13, 2023, the circuit court entered an order granting Aramark's summary-judgment motion. In its order, the circuit court made these findings:

The Court hereby:

(a)     finds and declares that pursuant to the Food Services Management Agreement (the "Agreement"), Aramark sells meal plan meals to the University of Arkansas at Pine Bluff ("University"), and not to meal plan students;

(b)     finds and declares that with each sale of meal plan meals to the University, Aramark transfers title to the meal plan meals to the University and not to any student;

(c)     finds and declares that Aramark's sales of meal plan meals to the University are exempt from the tax imposed under Section 13-47(d)(1)(b) of the Code of Ordinances of the City of Pine Bluff, Arkansas, as amended by Ordinance No. 6669 (the "A&P Tax"), as sales for resale, and as drop shipments[.]

In the order of summary judgment, the circuit court ordered PBA&P to refund Aramark's paid assessments of $316,418.51 and $127,923.67.

On June 26, 2023, PBA&P timely filed a posttrial motion that was a combination "Motion to Dismiss, in the Alternative Motion to Complete the Record, and Motion to Reconsider the Judgment in Favor of Aramark." In this motion, PBA&P argued that Aramark's complaint should be dismissed for lack of jurisdiction for failure to properly "appeal" PBA&P's decision imposing the taxes to the circuit court; that in the alternative, the circuit court record should be supplemented with the administrative proceedings before PBA&P; and that Aramark's motion for summary judgment should be reconsidered and denied on the merits.

11

On July 26, 2023, PBA&P's posttrial motion was deemed denied by operation of law. On August 11, 2023, PBA&P filed a timely notice of appeal from the order of summary judgment and the deemed denial of its posttrial motion.

## II. *Discussion*

PBA&P raises five arguments on appeal. PBA&P argues that (1) the circuit court lacked subject-matter jurisdiction; (2) the circuit court erred in denying PBA&P's motion to complete and/or supplement the record; (3) the circuit court erred in denying PBA&P's request to enlarge the time within which to respond to the motion for summary judgment; (4) Aramark failed to present material facts or law entitling it to an exemption from the tax; and (5) the circuit court abused its discretion in refusing to reconsider its order granting summary judgment. We address each argument in turn.

## A. The Circuit Court Lacked Subject-Matter Jurisdiction

For its first point on appeal, PBA&P argues that the circuit court lacked subject-matter jurisdiction over this action because Aramark failed to properly perfect its appeal of PBA&P's tax assessments to circuit court. PBA&P relies on District Court Rule 9(f) and argues there was a lack of compliance with the provisions therein. Relevant to PBA&P's argument, Rule 9(f) provides:

> (1) If an applicable statute provides a method for filing an appeal from a final decision of any governmental body or agency and a method for preparing the record on appeal, then the statutory procedures shall apply.

> (2) If no statute addresses how a party may take such an appeal or how the record shall be prepared, then the following procedures apply.

(A) *Notice of Appeal.* A party may appeal any final administrative decision by filing a notice of appeal with the clerk of the circuit court having jurisdiction of the matter within thirty (30) days from the date of that decision. . . . .

(B) *The Record on Appeal.* Within thirty (30) days after filing its notice of appeal, the party shall file certified copies of all the materials the party has or can obtain that document the administrative proceeding.

PBA&P asserts that because Aramark did not file a notice of appeal from the PBA&P decisions nor did it file the record from those proceedings in the circuit court, the circuit court never acquired jurisdiction, and the circuit court proceedings should have been dismissed.

PBA&P's jurisdictional challenge is misplaced because the District Court Rules do not apply to Aramark's application for judicial relief. The proper method for judicial relief is set forth in section 13-47(h) of the PBA&P Ordinance, which provides in relevant part:

(h) *Judicial Relief.*

(1) Within thirty (30) days after the issuance and service on the taxpayer of the notice and demand for payment of a deficiency in tax established by a final determination of the hearing officer or the commission, taxpayer may seek judicial relief from the final determination by either:

a. Within one (1) year of the date of the assessment, paying the amount of the A&P tax due, including any interest or penalties, for any taxable period or periods covered by the final assessment and filing suit to recover that amount within one (1) year of the date of payment. . . . ; or

b. 1. Within thirty (30) days of the issuance and service on the taxpayer of the notice and demand for payments, filing with the commission a bond in double the amount of the tax deficiency due, and by filing suit within thirty (30) days thereafter to stay the effect of the commission's determination.
. . . .

13

(2) Jurisdiction for a suit to contest the determination of the Commission under this section shall be in the Circuit Court of Jefferson County, *where the matter shall be tried de novo.*

Pine Bluff, Ark., Code of Ordinances § 13-47(h) (emphasis added). Similarly, Arkansas Code Annotated section 26-18-406 of the Arkansas Gross Receipts Act (which is incorporated into the PBA&P Ordinance), provides the method for judicial relief from a tax assessment, and under subdivision (a)(2) provides that judicial relief may be sought by paying the entire amount of the tax within one year of the date of the assessment and filing suit to recover that amount within one year. Subdivision (c)(1)(A) provides that the matter before the circuit court shall be tried de novo, and subdivision (g) provides that the Arkansas Rules of Civil Procedure apply to appeals under this section.

In this case, Aramark followed the proper procedure for seeking judicial relief under section 13-47(h)(1)(A) of the PBA&P Ordinance by paying the amount of the tax due within one year of the assessments and then filing a complaint in the Jefferson County Circuit Court to recover those amounts within one year of its payments. Aramark timely initiated the action by filing its complaint in circuit court as prescribed by Rule 3 of the Arkansas Rules of Civil Procedure, where the matter would then be tried de novo. District Court Rule 9(f) does not apply here; therefore, Aramark was not required to file a notice of appeal nor was it required to file the record of the proceedings before PBA&P in circuit court. Aramark's filing of the complaint was the proper method for seeking judicial relief; accordingly, contrary to PBA&P's argument, the circuit court had jurisdiction over this action.

14

B.  The Circuit Court Erred in Denying PBA&P's Motion to Complete and/or
Supplement the Record

PBA&P did not file any response to Aramark's motion for summary judgment nor did it offer any proof in opposition to the motion. However, after the circuit court entered the order granting Aramark's summary-judgment motion, PBA&P filed a posttrial motion where, among other things, it sought to supplement the circuit court record with the administrative proceedings before the PBA&P. PBA&P's motion was subsequently deemed denied, and PBA&P now argues that the circuit court erred in denying its request to supplement and complete the record in this regard.[6]

This argument has no merit. As we have already stated, the record from the PBA&P proceedings was not required to be filed in the circuit court, and under section 13-47(h) of the PBA&P Ordinance, the matter in circuit court was a de novo review. The supreme court has explained that a trial de novo "simply means that the whole matter is opened up for consideration by the circuit court as if the proceedings had been originally brought in that court." *Jones v. Reed*, 267 Ark. 237, 248, 590 S.W.2d 6, 13 (1979). If PBA&P considered evidence that had been presented in the original proceedings to be relevant to the circuit court proceedings, its opportunity to present that proof was in its response to Aramark's summary-judgment motion, to which PBA&P failed to respond. We therefore hold that the

_____

[6]We note that after the record was lodged in the court of appeals but before this case was submitted, PBA&P filed a motion in our court to complete the record with the administrative record, and our court denied the motion.

15

circuit court committed no error in denying PBA&P's request in its posttrial motion to supplement the record.

### C. The Circuit Court Erred in Denying PBA&P's Request to Enlarge the Time Within Which to Respond to the Motion for Summary Judgment

PBA&P next contends that the circuit court erred in denying its request for additional time to respond to Aramark's summary-judgment motion. Arkansas Rule of Civil Procedure 56(c) provides, in pertinent part:

> The adverse party shall serve a response [to the motion for summary judgment] and supporting materials, if any, within 21 days after the motion is served. The moving party may serve a reply and supporting materials within 14 days after the response is served. For good cause shown, the court may by order reduce or enlarge the foregoing time periods. No party shall submit supplemental supporting materials after the time for serving a reply, unless the court orders otherwise.

It is undisputed that PBA&P failed to timely respond to Aramark's summary-judgment motion within twenty-one days as required by Rule 56(c); however, it argues on appeal that because this failure was due to good cause, the circuit court should have granted its request for additional time to file its response. In support of its claim that there was good cause for its failure to timely respond, PBA&P cites the lapse of time between the filing of Aramark's complaint and its summary-judgment motion and asserts that its counsel had been substituted as counsel for PBA&P between these two filings and that counsel did not receive the summary-judgment motion through eFlex.

Precedent is clear that the grant or denial of a request for an extension of time to respond to a summary-judgment motion is reviewed for an abuse of discretion. *Dollar Gen. Corp. v. Elder*, 2020 Ark. 208, 600 S.W.3d 597. An abuse of discretion is a high threshold

16

that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* An appellant must show prejudice from the denial of an extension and has the burden of doing so; when a motion is based on a lack of time to prepare, we will consider the totality of the circumstances. *Id.*

Under the circumstances presented, we hold that the circuit court did not abuse its discretion in denying PBA&P's motion for additional time to file its response. Counsel for PBA&P had entered his appearance in the case more than four months before Aramark filed its summary-judgment motion. And in PBA&P's counsel's own affidavit, which was attached to PBA&P's reply to Aramark's response to the motion for enlargement, counsel confirmed that the summary-judgment motion was sent to his email address through the eFlex system.[7] PBA&P provided no compelling reason for its failure to timely respond to Aramark's motion, and we cannot say the circuit court acted improvidently, thoughtlessly, or without due consideration in denying its motion to extend the time to respond. Therefore, this argument affords PBA&P no grounds for relief on appeal.

### D. Aramark Failed to Present Material Facts or Law Entitling It to an Exemption from the Tax

Under this point, PBA&P argues that the circuit court erred in granting summary judgment to Aramark because Aramark failed to present facts and law entitling it to an

---

[7]In his affidavit, PBA&P's counsel stated that he was registered to receive eFlex pleadings under two email addresses, and he received Aramark's motion at one of these addresses.

exemption from the 2 percent tax.  In the circuit court's order granting summary judgment, it found that Aramark was exempted from the tax with respect to the meal plans it sold to UAPB because these constituted sales for resale and also drop shipments.  The relevant provisions entitling Aramark to an exemption are Arkansas Code Annotated section 26-52-401(12)(A) and Arkansas Department of Finance and Administration Regulation GR-5(D). Arkansas Code Annotated section 26-52-401(12)(A) provides a tax exemption for

> [g]ross receipts or gross proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles purchased, whether within or without the state if the sales within the state are made to persons to whom gross receipts tax permits have been issued as provided in § 26-52-202.

Regulation GR-5(D) provides:

> A drop shipment is a sales transaction involving three parties—two sellers and one consumer.  The first seller sells property to the second seller, who sells to the consumer; however, the first seller delivers the property directly to the consumer.  The taxability of drop shipments depends on the location of the second seller and the consumer.  The location of the first seller is irrelevant because the sale from the first seller to the second seller is an exempt sale for resale.

PBA&P argues that Aramark failed to offer proof to justify summary judgment in various respects.  PBA&P first argues that Aramark failed to show that its sales of meal plans to UAPB fell within the meaning of the sale-for-resale exemption and that there is a question of fact as to whether such sales are made to UAPB or to the students themselves.  PBA&P also claims that Aramark failed to provide the certification required to be entitled to the sale-for-resale exemption.  PBA&P further asserts that UAPB is not regularly engaged in the business of reselling the articles purchased as required by the sale-for-resale exemption.  And finally, PBA&P argues that the circuit court misapplied the proper standard of proof.

In *Hotels.com, L.P. v. Pine Bluff Advertising & Promotion Commission*, 2024 Ark. 86, 688 S.W.3d 399, the supreme court stated that the agency claiming a right to tax has the burden of proving that the tax law applies to the item sought to be taxed. Further, the appellate court strictly construes tax statutes "in limitation of the imposition of the tax," and any "doubt [shall] be resolved against the tax[.]" Ark. Code Ann. § 26-18-313(a), (f)(2) (Repl. 2020).

Our summary-judgment standard is well settled. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee, supra.* On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties.

Applying these standards, we hold that the circuit court did not err in granting Aramark's motion for summary judgment. In Aramark's summary-judgment motion, it argued that it was entitled to a tax exemption and attached proof to support its motion. This proof included the Agreement between Aramark and UAPB evidencing a sale-for-resale agreement with respect to the meal plans, and the Room and Board Contract under which UAPB sold the meal plans to its students. In the attached affidavits, representatives from both Aramark and UAPB stated that Aramark sold meal plans to only UAPB and did not sell the plans to the students or have any contractual relationship with the students. These affidavits, unrebutted by PBA&P, demonstrated that Aramark sold the meal plans to UAPB and not the students and that UAPB was regularly engaged in reselling the meal plans to its students. In its motion for summary judgment, Aramark asserted that UAPB was not required to have a gross receipts tax permit because it is undisputed that UAPB is exempt from the tax under Regulation GR-35(C). Aramark asserted further that it was exempt from the 2 percent tax as a drop shipment as provided in Regulation GR-5(D), and that under Regulation GR-53(H), a third-party vendor qualifies for a resale exemption regardless of whether its customer (i.e., the reseller) is registered with the Department to collect and remit sales or use tax. Because PBA&P failed to respond to Aramark's summary-judgment motion or offer any countervailing evidence, it failed to meet proof with proof or demonstrate the existence of a material fact as to whether Aramark is entitled to a tax exemption. That being so, we conclude that summary judgment was appropriate.

E. The Circuit Court Abused Its Discretion in Refusing to Reconsider Its Order Granting Summary Judgment

PBA&P's remaining argument is that the circuit court erred in refusing to consider the whole record (including the record of the administrative proceedings) and in refusing to reconsider its order granting summary judgment. Having concluded that the circuit court did not err in refusing to allow PBA&P to supplement the record and that the circuit court did not err in granting summary judgment to Aramark Based on the proof and arguments that were submitted, we conclude that this point is without merit.

III. *Conclusion*

In conclusion, we hold that none of the points raised by PBA&P in this appeal are grounds for reversal and that the circuit court did not err in granting Aramark's motion for summary judgment. Accordingly, the order of summary judgment is affirmed.

Affirmed.

VIRDEN, J., agrees.

BROWN, J., concurs.

**WAYMOND M. BROWN, Judge, concurring**. Appellant City of Pine Bluff, Arkansas Advertising and Promotion Commission ("PBA&P") appeals the order of the Jefferson County Circuit Court granting summary judgment in favor of appellee Aramark.

Aramark, among other ventures, contracts to provide food services at public and private educational institutions. The University of Arkansas at Pine Bluff ("UAPB") is one of the educational institutions where Aramark is contracted to operate the campus food-services program and provide prepared food. PBA&P is a local taxing agency established by section 13-50 of the Code of Ordinances of the City of Pine Bluff; it is responsible for

21

assessing, collecting, and reviewing the assessment of taxes on gross receipts for food products and services sold by for-profit enterprises in Pine Bluff. The issues in this case relate to the assessment and collection of tax on gross receipts for food products sold by Aramark to UAPB pursuant to a food services management agreement entered into by Aramark and UAPB.

Section 13-47(d)(1)(b) of the Code of Ordinances of the City of Pine Bluff provides:

A tax in the sum of two percent (2%) shall be levied in the city upon the portion of the gross proceeds received by restaurants, cafes, cafeterias, delis, drive-in restaurants, carry-out restaurants, concession stands, convenience stores, grocery store restaurants, and similar businesses, from the sale of prepared food and beverages for on or off-premises consumption.

Pine Bluff, Ark., Code of Ordinances § 13-47(d)(1)(b) (1990).

Section 13-47(b) incorporates both the Arkansas Gross Receipts Act and the Arkansas Tax Procedure Act with respect to enforcement and collection. Arkansas Supreme Court Rule 1-2(a)(8) provides that all cases appealed shall be filed in the court of appeals except those specifically required to be heard by the supreme court. In turn, section 26-18-406(c)(2) of the Tax Procedure Act provides that appeals under the Act will lie from the circuit court to the supreme court. Because this case involves enforcement and collection of gross-receipts tax and additionally because an argument on appeal directly involves the interpretation of the Tax Procedure Act as it relates to the proper standard of proof, this case falls squarely and explicitly within the Arkansas Supreme Court's jurisdiction. Noting such, we attempted to certify this case to our supreme court; however, as is their prerogative, in a 4–3 vote, certification was denied on December 7, 2023.

Turning to the circuit court's order granting summary judgment in favor of Aramark, while I agree with the majority's ultimate disposition to affirm, I arrive at it in a different manner; I reach the merits. The majority appears to reach its holding on the basis of PBA&P's failure to respond to Aramark's summary-judgment motion and meet proof with proof. However, in its order, the circuit court stated that after reviewing the motion for summary judgment, including the affidavits submitted by Aramark, Aramark is entitled to judgment as a matter of law. The order also provided:

The Court hereby:

(a) finds and declares that pursuant to the Food Services Management Agreement (the "Agreement"), Aramark sells meal plan meals to the University of Arkansas at Pine Bluff ("University"), and not to meal plan students;

(b) finds and declares that with each sale of meal plan meals to the University, Aramark transfers title to the meal plan meals to the University and not to any student;

(c) finds and declares that Aramark's sales of meal plan meals to the University are exempt from the tax imposed under Section 13-47(d)(1)(b) of the Code of Ordinances of the City of Pine Bluff, Arkansas, as amended by Ordinance No. 6669 (the "A&P Tax"), as sales for resale, and as drop shipments;

(d) orders that the Defendant refund Aramark's paid assessment of $316,418.51 plus pre- and post-judgment interest from the date of payment by Aramark until the date of refund by the Defendant;

(e) orders that the Defendant refund Aramark's paid assessment of $127,923.67 plus pre- and post-judgment interest from the date of payment by Aramark until the date of refund by the Defendant;

(f) by finding that Aramark is the prevailing party, orders that the Defendant pay Aramark's costs pursuant to Section 23-47(h)(4) of the Code of Ordinances;

23

(g) finds and declares that the Defendant's position was without a reasonable basis in law and fact, and orders that Defendant pay Aramark's reasonable attorney's fees. Aramark shall submit an attorney's fees affidavit to the Court within thirty (30) days; and

(h) orders all other just and proper relief to which Aramark may be entitled.

Plainly, the circuit court, in its order, did not simply find that Aramark's summary-judgment allegations were unrebutted by PBA&P. Instead, the court made specific merit-based findings and declarations based on the evidence presented that, as a matter of law, no genuine issue of material fact remained to be litigated. In affirming, I would address the court's findings and declarations.

According to the affidavits of Dr. Carla Martin, UAPB's vice chancellor for finance and administration; and Sam Zamrik, Aramark's south region district manager, there is no dispute that UAPB requires its residential students to purchase meal plans directly from UAPB pursuant to a room-and-board contract. Aramark is not a party to that contract. The student pays UAPB for the meal plan, not Aramark. UAPB does not prepare the meals provided under the meal plan. Instead, it hired Aramark to do so. According to Martin's affidavit, UAPB contracts with Aramark to prepare and sell the meal-plan meals to UAPB, which UAPB then resells to its meal-plan students. Zamrik confirmed that Aramark's sale of meal-plan meals to UAPB is for UAPB's resale to its meal-plan students. Both Martin and Zamrik also verified that UAPB pays Aramark for the meal-plan meals; Aramark receives no payment from students when the meals are delivered to or received by the students.

The tax ordinance at issue incorporates the Arkansas Gross Receipts Act. Aramark contends that pursuant to the Gross Receipts Act, its sales of meals to UAPB are not taxable

24

because it is the first sale in a "sale for resale" transaction and, additionally, that the sales of prepared food in college cafeterias are exempt from sales tax.

Section 53(A) of the Gross Receipts Act (GR-53) states:

The gross receipts or gross proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles or services purchased are exempt from tax provided that such sales are made to persons to whom a permit has been issued as provided in Ark. Code Ann. § 26-52-201 et seq. and GR-72.

006.05.212-GR-53 Ark. Admin. Code (WL current through March 15, 2025).

GR-72 states that "every person liable to remit the tax or make a return or report for the purpose of claiming any exemption from payment of the tax levied by Ark. Code Ann. § 26-52-101 et seq. shall make application for a permit on forms described by the Commissioner." 006.05.212-GR-72 Ark. Admin. Code (WL current through April 15, 2025).

The Commission contends that UAPB has never been issued a gross-receipts tax permit; consequently, because tax statutes are strictly construed, Aramark is not entitled to the sale-for-resale exemption; the meal-plan meals were not sold by Aramark for resale to an entity to whom a permit was issued. Arkansas Code Annotated section 26-52-401(3) (Supp. 2023) provides that gross receipts or gross proceeds derived from the sale of food, food ingredients, or prepared food in public, common, high school, or college cafeterias and lunch rooms operated primarily for teachers and pupils, not operated primarily for the public and not operated for profit, are exempt from the gross-receipts tax. Aramark asserts that pursuant to statute, UAPB is exempt by law from the tax and therefore is not a person or entity liable to remit the tax; hence, a permit was not required in order for Aramark to be

25

entitled to the sales-for-resale tax exemption. It is unnecessary to explore whether Aramark established a prima facie entitlement to summary judgment under the sale-for-resale exemption because in its order, the circuit court found that Aramark was entitled to summary judgment based on the sale-for-resale exemption and, alternatively, as drop shipments.

GR-5(D) defines a drop shipment as

> a sales transaction involving three parties - two sellers and one consumer. The first seller sells property to the second seller, who sells to the consumer; however, the first seller delivers the property directly to the consumer. The taxability of drop shipments depends on the location of the second seller and the consumer. The location of the first seller is irrelevant because the sale from the first seller to the second seller is an exempt sale for resale.

006.05.212-GR-5(D) Ark. Admin. Code (WL current through April 15, 2025). Here, Aramark established that it sells meals to UAPB. UAPB then sells the meals to students. However, Aramark, in its operation of campus food services, delivers the meals directly to the students when they "swipe" their meal-plan card. UAPB does not take delivery of the meals. Aramark, the first seller, delivers the "property" to the consumer, fitting the definition of a drop shipment. The circuit court's alternative finding that Aramark's sales of meal-plan meals are exempt from the tax imposed under section 13-47(d)(1)(b) of the Code of Ordinances of the City of Pine Bluff as drop shipments eliminates the permit requirement. I would affirm the circuit court's grant of summary judgment in favor of Aramark because there is no genuine issue of material fact as to whether Aramark was exempt from the imposed tax as a drop shipment.

For these reasons, I concur.

26

*Cross & Kearney, PLLC*, by: *Jesse L. Kearney*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Anton L. Janik, Jr.*, and *Cara D. Butler*, for appellee.