Cite as 2025 Ark. App. 499

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-548

| | | |
|---|---|---|
| RHIAN DENNING | | **Opinion Delivered** October 22, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE BENTON |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 04DR-19-252] |
| JAMES DENNING | | |
| | APPELLEE | HONORABLE DOUG SCHRANTZ, |
| | | JUDGE |
| | | |
| | | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Rhian Denning appeals after the Benton County Circuit Court filed an order granting appellee James Denning primary custody of their minor son (MC) and setting child support. Rhian does not challenge the sufficiency of the evidence to support the circuit court's order. Instead, she argues on appeal that (1) the circuit court abused its discretion in denying her request for a continuance; and (2) the circuit court erred in ordering child support without James first providing his affidavit of financial means. We affirm.

I. *Relevant Facts*

Pursuant to an agreed order filed on January 27, 2021, the parties had agreed to share joint custody of MC. On April 26, 2023, James filed an ex parte petition for immediate emergency custody and emergency hearing on visitation. He alleged a material change of circumstances justifying an ex parte change of custody due to Rhian's pending eviction

proceedings because she owed $8,100 in past-due rent; and she was cohabiting with a married man who had pending criminal charges, a history of intoxication, and an extensive felony criminal history. The petition further alleged that Rhian did not have a stable living situation appropriate for MC, Rhian was unable or unwilling to transport MC to school, MC had excessive absences and tardies at school, and MC prefers to reside with James. The circuit court granted James emergency custody of MC and scheduled a temporary hearing.

After a hearing held on May 18, 2023, the circuit court filed a temporary order granting James temporary custody of MC. Any visitation or contact with Rhian was at James's discretion. The issue of child support was reserved.

Because Rhian failed to file an answer to his petition, James filed a motion for default judgment on June 13, 2023. A hearing was held on August 14, 2023. In the resulting order, the circuit court found that James should continue to have custody of MC, continued the matter and scheduled a hearing for October 30, 2023, and ordered Rhian to obtain counsel within thirty days and to provide a completed affidavit of financial means within thirty days. The circuit court also ruled that there would "be no further continuances granted in this matter."

Attorney Katelyn Sholk entered her appearance on Rhian's behalf on September 11, 2023. Through counsel, Rhian filed a motion for a continuance and appointment of an attorney ad litem. On October 16, 2023, the circuit court reappointed the ad litem from the parties' prior divorce action, Sol Kim, to act as MC's attorney ad litem in this case.

On February 14, 2024, Ms. Sholk filed her motion to withdraw as Rhian's counsel. Ms. Sholk specifically alleged that Rhian "has breached the terms of their attorney-client agreement such that it is now necessary for Ms. Sholk to withdraw." The circuit court entered an order allowing Ms. Sholk to withdraw the same day. On February 15, 2024, the "Court Orders Clerk" sent a letter to Rhian informing her that Ms. Sholk had been relieved. The letter explained that Rhian was allowed to represent herself but that she would be "bound by the rules of law, procedure, and evidence just as if [she] were an attorney." The letter also provided Rhian the contact information for Legal Aid of Arkansas.

A final hearing was held on February 22, 2024. Rhian appeared without representation. At the beginning of the hearing, Rhian asked for a continuance "so that she can secure legal counsel after the Court granted her previous attorney permission to withdraw on the eve of trial." She acknowledged that her prior counsel served as pro bono counsel for a domestic-violence shelter and that her representation was limited to assisting domestic-violence victims. She further acknowledged that since the domestic-violence aspect of her separate case against an unrelated party had "abated, [prior counsel] could no longer represent [her]." Rhian additionally acknowledged that she received the circuit court's letter notifying her that her counsel had withdrawn and suggesting she contact legal aid. Rhian did not specify when she received that notice. Rhian told the circuit court that she had secured new counsel; however, she said new counsel was unable to appear because of a conflict and needed more than a weekend to prepare. Rhian alleged she was without counsel "through no fault of [her] own." The circuit court stated,

3

Here's the problem, Ms. Denning. We have set this case now four times. It's been continued at least twice on your occasion, and this is not particularly a surprise that we are here and you have not secured counsel at this point in time. Why should I keep on continuing this case when it needs to be brought to a conclusion?

Rhian replied, "Because it should have been brought to a conclusion way before this. . . . So I would like to finish it up as well, but I could not secure 2500 to $5,000 within six business days to get an attorney." She agreed that she "would love for it to be much more timely."

James objected to a continuance and noted that the case had been pending for almost a year, the matter had been continued before, and MC was almost seventeen years old. The attorney ad litem announced that he was ready to proceed, stated that MC would appreciate finality, and noted that Rhian's situation was one of "her own making" according to Ms. Sholk's motion to withdraw. The circuit court denied Rhian's motion for a continuance.

James testified that he desired a final order giving him primary custody. He explained that he had been following the attorney ad litem's recommendations and allowing Rhian some visitation with MC. He further explained the circumstances that led to his filing of his petition for primary custody. Because Rhian ultimately does not challenge the sufficiency of the circuit court's award of primary custody to James on appeal, it is unnecessary to discuss the testimony presented on that issue. James testified that he was asking Rhian to pay child support and for that support to be retroactive to the day he filed the petition. When he sought to admit the child-support worksheet into evidence and explained that the worksheet included both his and Rhian's incomes, the circuit court asked Rhian whether she had any objection. Rhian stated that she did and stated the following: "I've never ~ I have asked my

4

pro bono attorney to get a financial from Mr. Denning after I was asked for mine and that never happened. . . . I'd like to have that before I go into an agreement." The circuit court asked Rhian whether she had filed a motion to compel, and Rhian stated that she did not "have enough time, with her [counsel] leaving, to know that [she] would need to prepare that." The circuit court overruled the objection, and the child-support worksheet was admitted into evidence.

Rhian testified that she desired to continue to have joint custody and addressed the alleged changes in her circumstances. She also asked that she not be ordered to pay child support. She explained that James made "three times as much as" her and has "a dual income." Rhian stated that she is a single mother doing the best she could. She said she was employed by "Door-Dash" and "Care.com." She estimated that she earned approximately $1700 a month; however, she admitted that she provided an affidavit of financial means.

The circuit court filed a written final order on March 5, 2024, making the following relevant findings:

> 2. The Plaintiff, James Denning is granted primary custody of the parties' minor child[.]
>
> . . . .
>
> 4. The Court has determined that [James] earns a gross income of $5,660.13 per month and [Rhian] earns a gross income of $1,905.00 per month. Therefore, the parents' combined gross income is $7,565.13 with a basic child-support obligation of $943.00 for their one child per the Chart. [Rhian] is responsible for 18.21% of the total obligation and has basic child-support obligation of $255.67. [James] is responsible for 74.82% of the total obligation and has a basic

child-support obligation of $705.54.  [James] has a permissible deduction of $72.30 for the minor children's medical insurance deductibles.

5.      [Rhian] has a retroactive child support obligation to April 27, 2023. Therefore, [Rhian] is in arrears on her child support obligation in the amount of $2,556.70. . . .

This appeal followed.

## II.  *Motion for a Continuance*

Rhian does not challenge the sufficiency of the evidence to support the circuit court's order.  Instead, she first argues on appeal that the circuit court abused its discretion in denying her request for a continuance.  She complains that it "would be unfathomable for any court to deny a motion for continuance when a [pro bono] attorney has been allowed to withdraw a mere ten days (and only five working days) before trial, leaving an indigent defendant without representation, except that is exactly what this circuit court did."  She explains that she told the court that it was "impossible for her to raise $2500-$5000 in six days to hire [an] attorney" and alleges that there was "valid cause to continue the case." Rhian also argues that if she had been represented by counsel, "the outcome of the case *might* well have been very different."  (Emphasis added).  She vaguely explains that counsel would have been able to subpoena MC's counselor to testify, counsel could have made proper objections to omit "much of" James's testimony and elicited testimony from her that would have been allowed under the rules of evidence, counsel would have verified James's income with an affidavit of financial means, and counsel would have prevented her from being under the "threat[ ] of arrest by the court."  Accordingly, Rhian asks this court to reverse and

6

remand this case for a rehearing where she has "proper representation" and also asks that her case be transferred to another division because of "the circuit court's clear prejudice." We disagree.

We review a circuit court's denial of a motion for continuance using an abuse-of-discretion standard. *Goodson v. Bennett*, 2018 Ark. App. 444, 562 S.W.3d 847. A circuit court has an obligation to manage and control its docket in an efficient manner, and it is crucial to our judicial system that circuit courts retain the discretion to control their dockets. *Thames v. Thames*, 2024 Ark. App. 519, 700 S.W.3d 782. An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion but also must show prejudice that amounts to a denial of justice. *Sims v. Moser*, 373 Ark. 491, 284 S.W.3d 505 (2008). For the circuit court to have abused its discretion, it must have acted improvidently, thoughtlessly, or without due consideration. *Smith v. Smith*, 2023 Ark. App. 521.

Here, the case had been open nearly a year, and the circuit court had previously granted requests for a continuance even after it had stated that no further continuances would be granted. Rhian's previous attorney, Ms. Sholk, was allowed to withdraw after she alleged that Rhian "ha[d] breached the terms of their attorney-client agreement such that it [was] now necessary for Ms. Sholk to withdraw." Although Rhian acknowledged she had notice of the withdrawal, she waited until the day of the final hearing to request a continuance. Moreover, Rhian's vague arguments that the outcome "might" have been different had she had counsel that knew proper trial procedure is insufficient to satisfy her

7

burden to prove prejudice. This court does not presume bias or prejudice. *McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91. Merely because Rhian did not prevail in the instant action does not prove prejudice. *Id.* Given these circumstances, we find no abuse of discretion in the circuit court's denial of a continuance. *See Id.* (affirming the denial of continuance motion wherein appellant's arguments were that she had been unable to find counsel; she was pro se only because she lacked funds to hire counsel; she sought a continuance for time to obtain counsel; and she was prejudiced because she lost custody and did not know proper trial procedure so as to make relevant objections). Accordingly, we affirm on this point.

III. *Affidavit of Financial Means*

Rhian additionally argues the circuit court erred in ordering child support without James first providing his affidavit of financial means. The most recent version of Administrative Order No. 10(III)(7)[1] that was in effect at the time of the final hearing provides the following:

> The Affidavit of Financial Means and Worksheet shall be used in all family-support matters. Each party shall exchange the Affidavit of Financial Means and Worksheet at least three days before a hearing to establish or modify a support order. The Worksheet shall be filed in the court file and attached to the order that includes the child-support award. The Affidavit of Financial Means shall not be filed in the court file.

Rhian explains that she objected to the admission of the child-support worksheet because James had not provided her with an affidavit of financial means. She claims that the circuit

---

[1]We note that Rhian erroneously quotes a previous version of Administrative Order No. 10 in her brief.

court "ignored her objection," admitted the worksheet, and ordered child support using the worksheet. She argues, therefore, that the circuit court's order of child support was in violation of Administrative Order No. 10 and must be reversed and remanded. We disagree.

Rhian is correct that Administrative Order No. 10 requires the parties to exchange affidavits of financial means at least three days before a hearing to establish or modify a support order. That said, Administrative Order No. 10 does provide a specific sanction or state that a circuit court loses jurisdiction to set child support if a party fails to do so. Here, at the final hearing, Rhian objected to the admission of the child-support worksheet on the basis that she first wanted James's affidavit of financial means. She alleged that she asked her former attorney to request it, but "that never happened." When the circuit court asked whether Rhian had filed a motion to compel, Rhian stated that she did not "have enough time, with her [counsel] leaving, to know that [she] would need to prepare that." The circuit court overruled the objection and admitted the child-support worksheet into evidence.

Rhian now argues that we must reverse and remand the circuit court's child-support order on the basis that she did not have James's affidavit of financial means; however, she makes no cogent or persuasive legal argument or citation to legal authority in support of her argument that she is entitled to such relief. It is axiomatic that this court will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Thigpen v. City of El Dorado*, 2020 Ark. App. 531. It is also a well-settled principle of appellate law that we will not make a party's argument for him or her. *Thigpen*, *supra*; *see*

*Mann v. Pierce*, 2016 Ark. 418, 505 S.W.3d 150; *Nelson v. Fullerton*, 2023 Ark. App. 311.

Accordingly, we affirm on this point.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Elizabeth Finocchi*, for appellant.

*Tim Cullen*, for appellee.